The Honorable Thomas S Zilly

CC TO JUDGE

_____ FILED        _____ ENTERED
_____ LODGED       _____ RECEIVED

**APR 1 7 2001**

AT SEATTLE
CLERK U S DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

_____ FILED        _____ ENTERED
LODGED             RECEIVED

A R    5 2001    DJ

AT SEATTLE
CLERK U S DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

JULIE DUNCAN, on behalf of herself and all
others similarly situated,

                                Plaintiff,

      v

NORTHWEST AIRLINES, INC.,

                                Defendant.

Case No. C98-130Z

**PLAINTIFF'S REPLY MEMORANDUM IN
SUPPORT OF MOTION FOR CLASS
CERTIFICATION**

Noted for:  April 6, 2001

CV 98-00130 #00000127

1271 10 0038 MTN DOC

ORIGINAL



HAGENS BERMAN LLP
Attorneys at Law

OFFICES IN SEATTLE  PHOENIX  LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623 7292 • FACSIMILE (206) 623 0594

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............. . ..        . ............ .... .        .......... .... .        ............ ...        1

II    ARGUMENT........... .        . .. ...........    . .    . ........... .    .    . .. ... ........ .        3

 A    Ms. Duncan Has Easily Satisfied Rule 23(a)'s Requirements. ... ............. . .        3

  1.    Ms. Duncan plainly satisfies the low threshold required
  for commonality  .    ............ .    .    . . .. ........... .    .    .        ..... .........3

  2    Ms. Duncan is an adequate class representative..    .    . . ... ........ ..        3

 B.    The Court Can Certify a Rule 23(b)(3) Class for
 Medical-Monitoring Damages .        .    . ................ . .    . . . ............... .        6

  1    Common questions exist and will predominate at trial .    . . .    .......... .....        6

   a    Applying the laws of the seven states does not
   render class certification inappropriate.................    .    .. . ........6

    (1)    NWA has already conceded that class members' place
    of residence determines the law governing their claims.    6

    (2)    Ms Duncan's negligence claims present common
    questions of law ............... .... . .        ............ ..    .        7

    (3)    Ms. Duncan's claim for medical monitoring
    presents common questions of law ............ ... .    .        10

     (a)    Illinois, New York and Washington recognize
     medical monitoring as a cause of action and
     without any present physical injury  . . ............... .... .10

     (b)    California, Michigan and Minnesota recognize
     medical monitoring as a compensable form
     of relief    . . .  ............... .    .        . ...13

     (c)    Hawaii has yet to address the issue of
     medical monitoring . ............... . .    .    .    .. ... .15

    (4)    NWA's purported affirmative defenses raise
    common legal issues ..... .... . . . .    . ................ .. .    16

     (a)    Workers' compensation acts are not an exclusive
     remedy where the employer knows injury will
     occur but willfully disregards that knowledge.............17

PLAINTIFF'S REPLY MEMORANDUM IN
SUPPORT OF MOTION FOR CLASS
CERTIFICATION

- i -

HAGENS BERMAN LLP
*Attorneys at Law*

1271 10 0038 MTN DOC

OFFICES IN SEATTLE  PHOENIX  LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623 7292 • FACSIMILE (206) 623 0594

(b) Workers compensation is not the exclusive remedy if employer's motive violates public policy................ .. ..  ........................  .. ..... ..19

b. Individual issues of fact likewise do not preclude class certification  .  .... ...................  .  .  ................ .. 20

(1) Proof of the class members' negligence claims turn on common questions of fact . ... . . . . ................... 20

(2) Common factual issues will also resolve class members' entitlement to medical-monitoring relief...... .. 25

(3) Neither do NWA's affirmative defenses introduce individual factual issues that defeat certification.... . . 28

2 Class treatment is superior to individual trials – or no remedy at all  .  . .29

C The Court Can Also Certify Ms. Duncan's Injunctive Relief For a Medical-Monitoring Program Under Rule 23(b)(2)   ....................... .   .   . . .34

III CONCLUSION...   . ..... ............. .. .    . ................... ..   ..  . ..... ........... 37



HAGENS BERMAN LLP
Attorneys at Law

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623 7292 • FACSIMILE (206) 623 0594

1

## TABLE OF AUTHORITIES

2

### CASES

3

*Acevedo v Consolidated Edison Co* ,
4
    151 Misc 2d 347, 572 N.Y.S.2d 1015 (1991)...... .. ... . .................. ... .   .. ...........18, 19

5
*In re "Agent Orange" Prod. Liab. Litig* ,
    818 F.2d 145 (2nd Cir. 1987) .. .. ... .............. .. .. ... ....................... ....   . .................16, 24, 30

6
*Arch v American Tobacco Co* ,
7
    175 F R.D 469 (E.D Pa. 1997)........ ... . .. ..................... . .. ................. .... . . . 26

8
*Asaeda v Haraguchi,*
    37 Haw. 556, 1947 Haw Lexis 9 (1947)   . .. ................... ... .  ....................... . . 8

9
*In re Asbestos School Litig.,*
10
    104 F.R.D. 422 (E.D Pa. 1984)........ .   .. ................. ... . . . ............... ... . . . . . 4, 30

11
*Aviation West Corp v Department of Labor & Indus.,*
    138 Wn.2d 413, 980 P.2d 701 (1999).............. ... . . ................... .. .. ..................... .... . . 8

12
*Ayers v Jackson Township,*
13
    106 N J 557, 525 A.2d 287 (1987) . . ................. . . . ..................... ... . . . .................15

14
*Barnes v American Tobacco Co* ,
    161 F 3d 127 (3rd Cir. 1998)... . .. . ............. ..... .. .. .... .................. . . ...........25, 26

15
*Barnes v American Tobacco Co.,*
16
    176 F R.D. 479 (E D Pa. 1997), *aff'd,* 161 F.3d 127 (3rd Cir. 1998) ...................... ... . .. . ..26

17
*Birklid v Boeing Co.,*
    127 Wn.2d 853, 904 P 2d 278 (1995)........ . .. ..  .. ...................... .... . .. .... ...................18

18
*Blackie v Barrack,*
19
    524 F 2d 891 (9th Cir. 1975), *cert. denied,* 429 U.S. 816 (1976) . .......................... .. .. . 3

20
*Broin v Philip Morris Cos* ,
    641 So. 2d 888 (Fla. Ct. App. 1994)......... .. .  .. .................. .... .. .. .. .. ................... . *passim*

21
*Cameron v. E M Adams & Co* ,
22
    547 F.2d 473 (9th Cir. 1976) ............. .. .   .. .................. .... .. .. .. ...................... . . 28

23
*Carey v. Kerr-McGee Chem Corp* ,
    999 F. Supp. 1109 (N D Ill 1998) ................... .... . ... .. .   . .......................... ... . 6, 10, 11, 13

24
*Caridad v Metro-North Commuter R R* ,
25
    191 F 3d 283 (2nd Cir 1999)............. . .   . .. .................... .. . . . . . ... ............. ... . . 22

26
*Charles J Vacanti, M D , Inc v State Comp Ins Fund,*
    24 Cal. 4th 800, 14 P.3d 234 (2001)......... .. .... ...................... .. . . ...................... 19, 20



1271 10 0038 MTN DOC

HAGENS BERMAN LLP
attorneys at law

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

*Clay v American Tobacco, Inc ,*
188 F R.D. 483 (1999) ............ .... . .. ........ .. ............... .. ........... . . ........... . 26

*Cook v. Rockwell Int'l Corp.,*
151 F.R.D. 378 (1993).. . ... .......... . .. ............... . ......... . . . ........... .. 5, 27, 28

*In re Copley Pharms , Inc ,*
158 F R D 485 (1994). ... . .... ............ . . ............. . . ............... .. ............... .. . . ... ...7, 33

*Corgan v Meuhling,*
143 Ill 2d 296, 574 N.E 2d 602 (1991) . .................. . .................. ... ............. ... ............... 7

*Day v NLO, Inc ,*
144 F R.D. 330 (S D Ohio 1992) . ........... . . . ............ . . ........... .. . . ...... ....... .27, 34

*Dayton Hudson Corp v. Johnson,*
528 N.W.2d 260 (1995) ....... ... . .. ............ ... . ............... . . ............... ... . ............... .. 8

*Dehttar v Mietkowski,*
372 Mich 527, 127 N.W.2d 388 (1964) ..... .. ................. . . ............... ... ... ............... . . . ...8

*Denman v. Coppola Gen Contr. Corp ,*
256 A.D.2d 1050, 683 N.Y.S.2d 617 (1998) ....... . . ................ ............... . . ............ .8

*Dhamer v. Bristol-Meyers Squibb Co ,*
183 F R.D. 520 (N D Ill. 1998) .... .... ............ . . .. ........... ... . .. ............. . . . ...... *passim*

*Duncan v Northwest Airlines, Inc ,*
208 F 3d 1112 (9th Cir 2000) ........... . ............... .. . .... ............... .. .. ............... . . ............... 36

*Durfey v E I DuPont de Nemours Co ,*
59 F.3d 121 (9th Cir 1995) ........... . ............... .. . .. ............... ... . ............... .. . . ........... 6, 12

*Elam v Alcolac, Inc ,*
765 S W.2d 42 (Mo Ct App. 1988).. . . ............... . .. .. . ............... . .. . ............... . 26

*Elliott v Chicago Housing Authority, CHAC, Inc ,*
2000 U S Dist Lexis 2697 (N.D Ill 2000) ....... . . .................. . . . .. ................. . . . . ...........37

*In re Energy Systems Equipment Leasing Sec Litig ,*
642 F. Supp. 718 (E D.N Y. 1986) .... .. ............... . ... . ............... ... . .. .................. 5, 28

*Fickinger v C I Planning Corp ,*
103 F.R.D. 529 (E.D. Pa. 1984) ......... .. . ............... ... . .. .. .. ............ .. . ... ............... .. 28

*Foley v. Honeywell, Inc ,*
488 N.W.2d 268 (Minn. 1992) ........... ................... . . ............... . . ........... ... 17

*Friends for All Children, Inc. v. Lockheed Aircraft Corp ,*
746 F 2d 816 (D C Cir. 1984) .......... . . . .................. . . . .................. ...................13

PLAINTIFF'S REPLY MEMORANDUM IN
SUPPORT OF MOTION FOR CLASS
CERTIFICATION

- IV -



HAGENS BERMAN LLP
*Attorneys at Law*

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623 7292 • FACSIMILE (206) 623 0594

1271 10 0038 MTN DOC

*German v Federal Home Loan Mortg Corp*,
   885 F. Supp. 537 (S D.N.Y. 1995) ........    ..................... .... .. .................... ... ........................ . 34

*Gete v INS*,
   1999 U.S Dist Lexis 11806 (W.D. Wash. July 21, 1999) ........................ ... ....................... 34

*Gibbs v E I DuPont De Nemours & Co*,
   876 F. Supp 475 (W.D.N.Y 1995). ............ ... . ................... .. . ................... . 34, 35

*Great Rivers Co-op v Farmland Indus*,
   120 F.3d 893 (8th Cir. 1997) ... .. .. . ................... ... . .. ............... ... . . ............. 5, 6

*Gruber v Price Waterhouse*,
   117 F.R.D. 75 (E D. Pa 1987)........... ..... ................. ... . . ... .................. . .... ..28

*Hall v Hackley Hosp*,
   210 Mich App. 48, 532 N.W.2d 893 (1995)........ .. ...... ................. .. . ....................... 9

*In re Hanford Nuclear Reservation Litig*,
   780 F. Supp 1551 (E.D. Wash. 1991). ................... ... .. .................. ... . .. ................... .12

*Hartford Fire Ins Co. v Walter Kidde & Co*,
   120 Mich. App. 283, 328 N.W.2d 29 (1982)................... . ... .. ............... .... . . .. ................7

*Hentzel v. Singer Co*,
   138 Cal. App. 3d 290, 188 Cal. Rptr. 159 (1982)............... .... . ................ .... .. ... .... .........8

*Huggins v Longs Drug Stores California, Inc*,
   6 Cal 4th 124, 862 P.2d 148 (1993)  ................. .. . .. ................. .. ... .................... . . . 7

*Hurd v Monsanto Co*,
   164 F R.D. 234 (S.D Ind. 1995) ................. .    ................... ... . .. ..................... .    . 27

*Jablonski v Mutlack*,
   63 Ill App. 3d 908, 380 N E.2d 924 (1978)..... .  .. . ................... ... .. . .. .. ................... 18

*Jaffee v United States*,
   592 F.2d 712 (3rd Cir 1979).................. ...    ...................... . .. . ...................... 37

*Jenkins v Raymark Indus , Inc*,
   782 F 2d 468 (5th Cir. 1986)...... ...... ...  . ... .. ................ .. . . . . ..................... ... . 30, 31

*Johannesen v New York City Dep't of Housing Preservation & Dev*,
   84 N.Y 2d 129, 638 N.E.2d 981 (1994) . ............ ........ .  . . . . ..................... ... . . 17

*Koker v Armstrong Cork, Inc.*,
   60 Wn App 466, 804 P.2d 659 (1991). .. .. ................... .. ... ... ..................12, 13

*Krueger v New York Tel Co*,
   163 F.R.D 433 (S D N Y 1995)...................... .. ... .. . .. . .. ..................... . . 22

HAGENS BERMAN LLP
Attorneys at Law

OFFICES IN SEATTLE  PHOENIX  LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623 7292 • FACSIMILE (206) 623 0594

*Leyva v Buley,*
  125 F.R.D. 512 (E.D. Wash 1989)................... ... ........................... ..... ...................... . . .. 3

*Linder v Thrifty Oil Co,*
  23 Cal 4th 429, 2 P.3d 27 (2000). . ................. ... . . .................... . . . .. 9, 15

*Marsh v McLennan, Inc v. Superior Court,*
  49 Cal. 3d 1, 774 P.2d 762 (1989) ............ ...... . .. .................... . ... .. .................... ... 19

*McCarthy v Dept of Social & Health Servs,*
  110 Wn.2d 812, 759 P 2d 351 (1988)....... . . ........................... . .... ...................... . ... . 8

*Meerbrey v Marshall Fields & Co,*
  139 Ill 2d 455, 564 N.E.2d 1222 (1990) ....................... . . . ................. ..... .. . 18

*Merry v Westinghouse Elec Corp,*
  684 F. Supp. 847 (M D Pa. 1988).............. ... . ... ...................... .. ... . . ..................... 15

*Meyerhoff v Turner Constr Co,*
  210 Mich. App 491, 534 N.W.2d 204 (1995) ... .................. .. .. . .......................... . . . 14, 22

*Meyerhoff v. Turner Constr Co,*
  456 Mich. 933, 575 N.W 2d 550 (1998).............. .. . ... .. ..................... .. .. . . .................... 14

*Mordkofsky v V C V Dev Corp,*
  76 N Y 2d 573, 563 N.E.2d 263 (1990) .............. ... .. . . ................... .. . . ............ .....8

*Mullen v Treasure Chest Casino, LLC,*
  186 F.3d 620 (5th Cir 1999) .................... . . .................................. .. ..................... . 4, 32

*Nivens v 7-11 Hoagy's Corner,*
  133 Wn.2d 192, 943 P 2d 286 (1997).............. .. . ... .. ..................... .. . .. . ..............8

*O'Connor v Boeing North Am., Inc.,*
  180 F.R.D 359 (C D Cal 1997).... ................ .. . . .................... .. . ... . .. . 27, 37

*O'Connor v Boeing North Am, Inc,*
  184 F.R D 311 (C D Cal. 1998)........... . . .. .. ................... ....... . . .. . ..................... 22

*O'Donnell v City of Chicago,*
  126 Ill. App. 3d 548, 467 N E 2d 971 (1984)....... ........ . . . . .. ..................... .. . . 17

*In re Paoli R Yard PCB Litig,*
  916 F 2d 829 (3rd Cir 1990) ................. . ... . . ... ...................... . . . . ... ...........10, 11, 12

*Parker v Tharp,*
  409 N.W.2d 915 (1987).. ... . .. ................... ... .... .......................... .... . . .. ... .18

*Parodi v. Merit Systems Protection Bd,*
  690 F.2d 731 (9th Cir. 1982) . . ............ ... . .. . .. .................... . . . . .................... . 9

PLAINTIFF'S REPLY MEMORANDUM IN          - vi -
SUPPORT OF MOTION FOR CLASS
CERTIFICATION



HAGENS BERMAN LLP
*Attorneys at Law*

OFFICES IN SEATTLE  PHOENIX  LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623 7292 • FACSIMILE (206) 623 0594

1271 10 0038 MTN DOC

*Patton v  General Signal Corp ,*
   984 F. Supp. 666 (W.D.N.Y. 1997) ........................ .. .   . .................... . ... ....................... .. 11, 12

*Pechan v  DynaPro, Inc ,*
   251 Ill  App  3d 1072, 622 N E.2d 108 (1993).. ..   . . .. ................ ... .   .... .............. .. .. 18

*In re Polyproperylene Carpet Antitrust Litig ,*
   996 F. Supp. 18 (N.D  Ga  1997)......... ....    .................    .. . .. .................. ....... .... . ......... 21

*Potter v  Firestone Tire & Rubber Co ,*
   6 Cal. 4th 965, 863 P 2d 795 (1993)..    . .................... .   ................ ....   . 13, 14, 16, 23

*Ramos v  Philip Morris Cos ,*
   743 So  2d 24 (Fla. Dist. Ct App. 3d Dist.)........... . . . . .. ................ .. .   . ..................... 33

*Redland Soccer Club, Inc  v  Dep't of the Army,*
   548 Pa  178, 696 A.2d 137 (Pa  1997) ............ . . .  . .............. .... .  . .. ... ............ ..... . 15

*Rishcoff v. Commodity Fluctuations Sys , Inc ,*
   111 F.R.D. 381 (E.D. Pa. 1986)................    . ..................  ..  .  ......................... .. .. .....28

*Shimp v  New Jersey Bell Telephone Co ,*
   145 N.J. Super  516, 368 A.2d 408 (1976)   ................... ..    .......................... ... .............8, 9

*Siler v  Principal Fin  Secs , Inc ,*
   2000 Minn  App  Lexis 1239 (Dec. 12, 2000)......... . . . .  ... ................ .. .  ... ............... .7, 8

*Slaven v. BP Am , Inc ,*
   190 F.R.D. 649 (C.D. Cal  2000).. ............ . . .  ... ...................... ... ...................... ...   . 31, 32

*Smith v. Brown & Williamson Tobacco Corp ,*
   174 F.R.D. 90 (W.D  Mo  1997)................ ..   . . ............. .. ... .. . .. ................ .... . 25, 26

*Smith v. Cutter Biological,*
   72 Haw  416, 823 P.2d 717 (1991)   . .............    . . . .  ... ............... .. . .   .................... 7

*Smith v  University of Wash  Law Sch ,*
   2 F  Supp. 2d 1324 (W.D. Wash. 1998)............ ..  . . ..   .................... . ..   .. ................. . 35

*Sorenson v  Raymark Indus.,*
   756 P.2d 740 (1988).. .   .  . .  .   .............. ...  . . ... ................ .. . . .. . ...................12, 13

*State Compensation Ins. Fund v  Operated Equip. Co ,*
   265 Cal. App. 2d 759, 71 Cal  Rptr. 531 (1968). . .  . . .  . .............. ....  . ..................... ... ..8

*Thomas v  FAG Bearings Corp.,*
   846 F. Supp. 1400 (W D. Mo. 1994) ......... . ..  ................... .... . .. ...................... .. 27

*Thompson v  American Tobacco Co.,*
   189 F R D  544 (D  Minn. 1999)..... .. .  . .  ................    .   . .  .................... ....... .. . .15, 27

PLAINTIFF'S REPLY MEMORANDUM IN
SUPPORT OF MOTION FOR CLASS
CERTIFICATION

- vii -

HAGENS BERMAN LLP
*Attorneys at Law*

OFFICES IN SEATTLE  PHOENIX  LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623 7292 • FACSIMILE (206) 623 0594

*Travis v. Dreis & Krump Mfg. Co.,*
  453 Mich. 149, 551 N.W.2d 132 (1996) ......................... . . . ............... .. . .... ...............19

*Tylka v. Gerber Prods. Co.,*
  178 F.R.D. 493 (N.D. Ill. 1998) .. .............. .... .. .. ... ............... .. .. ..................... . 3

*Valentino v. Carter-Wallace, Inc.,*
  97 F.3d 1227 (9th Cir. 1996) .... . .. .................... ... .. ..................... ... .. ........23, 24, 32

*Walsh v. West Baden Springs Co.,*
  291 Ill. 34, 125 N.E. 727 (1919)...... ....... .. . ............... .. . .. ............... . .. . .... .. .....8

*Watson v. Shell Oil Co.,*
  979 F.2d 1014 (5th Cir. 1992) .. .. . ................ .... . . ............... . .. . ... ............ . 33

*Werlein v. United States,*
  746 F. Supp. 887 (D. Minn. 1990), *vacated on other grounds,*
  793 F. Supp. 898 (1992) ... ..................... . ................... ... . . ..................... .. .....14, 27

*Yslava v. Hughes Aircraft Co.,*
  845 F. Supp. 705 (D. Ariz. 1993) .......... . ... ............... . . .. .................. ... 34, 36, 37

**STATUTES**

820 ILCS 305/5..... . .. . . .. ................. . . .................. . . .. ................. . . .. .. .......17

820 ILCS 305/11.......... .. . .... ............... .. . ................... .. . ................... .. . . .. ..17

Cal. Lab. Code § 3600 . . ................ . . ................... . .. ................... ... . . . .. ......17

Fed. R. Civ. P. 23(b) . . ................... ... . .. ................ . . . .................. . .. . ......... *passim*

HRS 386-3 . . ................... .. . .. ................... .. . ................... .. . . . . ................17

Minn. Stat. § 176 011. ... ................... . .. . ............... . . . . ..................... .. . .17

MSA § 17 237 . . . ... ................... . . .................... ... . ..................... .. . . 17, 19

RCW 51.24.020 . .... . . .. . . ............... .... . ................... . . ..................... ..... 17

PLAINTIFF'S REPLY MEMORANDUM IN                - viii -
SUPPORT OF MOTION FOR CLASS CERTIFICATION

1271 10 0038 MTN DOC



HAGENS BERMAN LLP
ATTORNEYS AT LAW

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 Fifth Avenue, Suite 2900 · Seattle, WA 98101
TELEPHONE (206) 623 7292 · FACSIMILE (206) 623 0594

1

## I.   INTRODUCTION

2       Defendant Northwest Airlines, Inc. ("NWA"), one of the nation's largest air carriers, has

3   thrown its enormous resources against Ms. Duncan's efforts to certify a class, but all for naught

4   NWA's arguments, stripped of their rhetoric and obfuscations, only confirm that issues common to

5   every class member will predominate at trial – and that Ms. Duncan's claims are well suited for class

6   treatment   To review, this case involves uniform misconduct and injury   Long after NWA banned

7   smoking on all other flights – because it recognized that "involuntary exposure to tobacco smoke is

8   especially hazardous to cabin crews"[1] – and despite its unequivocal duty to provide a safe work envi-

9   ronment, NWA continued to permit smoking on its Asian routes in order to protect its market share

10  As a result, Ms Duncan and other NWA flights attendants on those Trans-Pacific routes were forced

11  to breathe cabin air fouled with carcinogenic cigarette smoke   Though many of them suffered physi-

12  cal injuries, the focus of Ms Duncan's motion to certify is her request for medical-monitoring relief.

13      NWA opposes class certification with a shotgun approach, but none of its arguments hit the

14  mark.  Even so, NWA does *not* challenge Rule 23(a)'s numerosity and typicality factors, and its

15  opposition to commonality ("there are *no* common questions of law or fact") is plainly untenable as

16  the presence of one common question satisfies commonality. And as shown in Ms. Duncan's discus-

17  sion of Rule 23(b)(3)'s predominance factor, this case involves many common issues. *See infra* at 3

18      As to the fourth Rule 23(a) factor, Ms. Duncan's adequacy to represent the class, NWA

19  manufactures "conflicts" where there are none. Ms. Duncan, a non-smoker, has no conflict with

20  class members who do smoke   She asserts no claim against them (as NWA apparently would have

21  her do), and the fact that smokers' baseline risk of contracting smoking-related diseases is higher

22  than non-smokers' risk, NWA's breach of its duty to provide a safe workplace still materially

23  increased their risk.  NWA's contention that Ms. Duncan is not an active class representative based

24  on her conduct as an *absent* class member in a *separate* litigation also merits little attention.  Finally,

25

26
---
[1] Ex  A to Declaration of Erin K  Flory ("Flory Decl ") at PLF 0000402

PLAINTIFF'S REPLY MEMORANDUM IN          - 1 -
SUPPORT OF MOTION FOR CLASS
CERTIFICATION

1271 10 0038 MTN DOC



HAGENS BERMAN LLP
Attorneys at Law

OFFICES IN SEATTLE  PHOENIX  LOS ANGELES
1301 Fifth Avenue, SUITE 2900 • Seattle, WA 98101
TELEPHONE (206) 623 7292 • FACSIMILE (206) 623 0594

1   NWA's purported affirmative defense that Ms. Duncan chose to work in a hazardous environment
2   applies to all class members and is thus a common legal issue. *See infra* at 3-6.

3       Ms. Duncan's claims also satisfy Rule 23(b)(3)'s requirement that common issues predomi-
4   nate over individual issues at trial. NWA's arguments that individual issues of law outweigh com-
5   mon issues fail  As to choice-of-law issues, NWA has already conceded in its concurrently filed
6   summary-judgment motions that the law of Washington – Ms. Duncan's place of residence – applies
7   to her claims. NWA also suggests that this Court will be overwhelmed trying to apply the negli-
8   gence common law of the seven states where class members reside. In fact, the elements of a
9   common-law negligence cause of action are identical, and each state requires employers to provide a
10  safe and hazard-free work environment. As to medical monitoring, all states except Hawaii already
11  recognize it as either a claim or a form of relief. Lastly, NWA's affirmative defenses merely raise
12  additional common questions, and thus do not defeat certification. *See infra* 6-20.

13      NWA also proclaims that there are "no" factual issues common to class members' claims.
14  NWA's argument, however, is fundamentally flawed. NWA ignores that class-certification motions
15  are not opportunities for testing the merits of a plaintiff's case. Rather, courts look to the plaintiff's
16  allegations and evidence to determine whether the claims can be proved class-wide with common
17  evidence. Ms. Duncan can do so here. Her evidence shows that NWA permitted cigarette smoking
18  on all Trans-Pac flights and that the ensuing levels of smoke on all such flights created an increased
19  risk of disease to all flight attendants after 578 hours of exposure. NWA may dispute those facts, but
20  that is a matter for the jury. *See infra* at 20-28

21      Class treatment of Ms. Duncan's claims for medical monitoring will be manageable as well
22  She proposes a bifurcated trial plan that will first resolve the numerous common issues of law and
23  fact, followed by a separate proceeding to determine the remaining individual issues, which concern
24  (i) application of the statute-of-limitations discovery rule, (ii) causation for purposes of physical-
25  injury claims, and (iii) damages for these same claims. *See infra* at 29-33.

26      Finally, certification under Rule 23(b)(2) is also appropriate because NWA has breached a

PLAINTIFF'S REPLY MEMORANDUM IN          - 2 -
SUPPORT OF MOTION FOR CLASS
CERTIFICATION

HAGENS BERMAN LLP
*Attorneys at Law*

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623 7292 • FACSIMILE (206) 623-0594

1  duty to provide a safe and hazard-free workplace owed to all class members, and the requested

2  medical-monitoring relief is injunctive in nature. *See infra* at 34-37.

3  ## II.    ARGUMENT

4  ### A.    Ms. Duncan Has Easily Satisfied Rule 23(a)'s Requirements

5          Certification under any of Fed. R. Civ. P. 23(b)'s three subparagraphs requires satisfaction of

6  Rule 23(a)'s four requirements. *See* Pltf's Brief at 21-25   NWA prudently does not question that

7  Ms. Duncan has established numerosity and typicality (Rule 23(a)(1) & (3)), and its challenges to

8  commonality and adequacy (Rule 23(a)(2) & (4)) are easily resolved

9          ### 1.    Ms. Duncan plainly satisfies the low threshold required for commonality

10         Commonality under Fed R Civ P. 23(a)(2) is readily met. As Ms Duncan has already esta-

11  blished, when, as here, the class is united by a common interest in determining whether NWA's

12  conduct was legal, differences in the impact of this conduct on individual class members (and other

13  individual differences) do not defeat commonality. *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir.

14  1975), *cert. denied*, 429 U S. 816 (1976), *Leyva v Buley*, 125 F R.D. 512, 515-16 (E.D. Wash.

15  1989); Pltf's Brf. at 22:5-12   If "'at least one question of law or fact [are] common to the class,'

16  then commonality is satisfied." *Tylka v. Gerber Prods. Co.*, 178 F.R.D. 493, 496 (N.D Ill. 1998).

17         Faced with this low threshold, NWA boldly asserts, "there are no common questions of law "

18  Def Opp. at 22:16   Nonsense  Ms. Duncan will not belabor the point, but NWA's position that not

19  one common issue exists in this litigation is inherently dubious. Ms Duncan confirms below that

20  not only do common issues exist, but they will *predominate* at trial, a certification element under

21  Rule 23(b)(3)   The Court will find in that discussion numerous legal and factual issues common to

22  all class members. *See infra* at 6-28; *see also supra* at 30. It is plain from that discussion that "at

23  least one question of law or fact" exists that is common to the class   Commonality is satisfied

24         ### 2.    Ms. Duncan is an adequate class representative

25         NWA's first line of attack on Ms Duncan's adequacy is her decision to include in the class

26  former smokers and smokers. Def. Mem at 28:18-21. According to NWA, smokers and former

PLAINTIFF'S REPLY MEMORANDUM IN       - 3 -
SUPPORT OF MOTION FOR CLASS
CERTIFICATION

1271 10 0038 MTN DOC



HAGENS BERMAN LLP
*Attorneys at Law*

OFFICES IN SEATTLE  PHOENIX  LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623 7292 • FACSIMILE (206) 623 0594

1    smokers' claims "have no relationship to Plaintiff's claims" because (i) they allegedly contributed to
2    her injury, and (ii) they are at a greater risk of illness. Def Mem. at 28 23-25. These arguments fail
3    because they are unrelated to Ms Duncan's adequacy. *First*, Ms. Duncan has no claim against
4    smokers, who were only able to smoke on Trans-Pac flights because NWA permitted them to do so.
5    Individual smokers did nothing wrong, and NWA's argument is a red herring

6         *Second*, the fact that these individuals may be at greater risk of diseases does not mean that
7    Ms. Duncan cannot represent them. As Mr. Repace makes clear in his report, exposure to second-
8    hand smoke increases the risk of disease in *everyone* – smokers, former smokers and nonsmokers –
9    irrespective of their particular baseline risk. Ex. 1 to Declaration of James L. Repace dated April 3,
10   2001 ("Repace Reply Rep.") ¶ 6   The fact that smokers' own conduct may affect their own baseline
11   risk does nothing to lessen Ms. Duncan's adequacy to represent them here. As the court found in *In
12   re Asbestos School Litig*, 104 F.R D. 422, 430 (E.D. Pa. 1984), "so long as the harm suffered is of
13   the same type," the named plaintiffs can represent others who injury may "differ in degree."
14   Reflecting this analysis, the court in *Mullen v Treasure Chest Casino, LLC*, 186 F.3d 620, 526 (5th
15   Cir 1999), rejected assertions of inadequacy and conflict, and permitted non-smokers to represent a
16   class that included smokers in a case arising from secondhand smoke in the work environment
17   because the differences in circumstances between them "does not affect the alignment of their inter-
18   ests." There thus were no disabling conflicts of interests. *Id*  NWA likewise fails to establish any
19   "conflict" between Ms. Duncan and any smoker class member

20        NWA turns next to the *Broin v American Tobacco Co.* litigation, arguing that because Ms.
21   Duncan declined to participate in *that* litigation she is an inadequate class representative in *this* liti-
22   gation. Def Mem. at 29.22-25. But Ms Duncan has prosecuted this litigation with great vigor –
23   which NWA does not dispute – and her participation in other litigation is immaterial   Further, it is
24   not surprising that Ms. Duncan did not wish to take an active role in the *Broin* settlement. In *Broin*,
25   plaintiffs filed a class-action lawsuit against Philip Morris, Inc , and other cigarette manufacturers
26   seeking damages under theories of strict liability, breach of implied warranty, negligence, fraud,

PLAINTIFF'S REPLY MEMORANDUM IN          - 4 -
SUPPORT OF MOTION FOR CLASS
CERTIFICATION



1271 10 0038 MTN DOC

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623 7292 • FACSIMILE (206) 623 0594

misrepresentation and conspiracy to commit fraud. *See Broin v Philip Morris Cos*, 641 So 2d 888, 889 (Fla. Ct. App. 1994).[2] Though NWA suggests otherwise, the *Broin* settlement did not provide NWA flight attendants with any substantive relief that Ms. Duncan seeks. As set forth in the *Broin* Settlement Agreement and Class Notice, the settlement largely only establishes *a procedure* for pursuing individual claims against the tobacco defendants[3] The *Broin* settlement does not provide medical-monitoring relief – the relief Ms. Duncan primarily seeks in this lawsuit.[4] And to the extent NWA asserts that the *Broin* settlement somehow bars Ms. Duncan's claim, that is a defense that purports to apply to all class members who did not opt out of *Broin*, and is thus a common question

NWA next challenges Ms. Duncan's adequacy on the grounds that she is vulnerable to affirmative defenses For example, NWA argues that "she voluntarily accepted the risks of ETS " Def Mem. at 29:8-9. Yet NWA could assert this affirmative defense against all Trans-Pac flight attendants, who chose to work those flights. Further, this affirmative defense, as well as defenses relating to statute of limitations and workers' compensation (Def. Mem. at 30 13-14), are impermissible inquiries into the merits Indeed "an inquiry into a claimed affirmative defense impermissibly allows an issue going to the merits of the litigation to intrude upon the class certification analysis required by Rule 23." *Cook v Rockwell Int'l Corp*, 151 F.R.D 378, 386 (1993) (citing *Rishcoff v Commodity Fluctuations Sys., Inc.*, 111 F.R.D. 381, 382 (E.D. Pa. 1986), *Fickinger v C.I. Planning Corp*, 103 F.R.D 529, 532 (E.D. Pa 1984)).[5]

---

[2] The trial court dismissed the class allegations, but on appeal the appellate court granted class treatment despite the tobacco industry's cries of differences in limitations periods and substantive state law *Id* The parties began presenting evidence in Phase I of the bifurcated class-action trial The parties announced a settlement during defendants' presentation of evidence *See* Flory Decl Exs B & C (Settlement Agreement and Class Notice)

[3] The settlement dismissed all statute-of-limitations defenses and generic causation was established in favor of class members In exchange, however, class members gave up intentional-tort and punitive-damage claims

[4] Rather, the *Broin* settlement sets up a $300 million *research foundation* whose apparent purpose is to provide research grants to study secondhand smoke *See* Flory Decl Ex B (settlement agreement) This foundation, entitled the Flight Attendant Medical Research Institute, provides no monitoring program whatsoever *See id* And to the best of Ms Duncan's knowledge, since the foundation has come into existence, it has held few, if any, board meetings In fact, Ms Duncan is able to uncover information relating to the settlement only from random news articles that she may come across Repeated attempts by Ms Duncan's counsel to contact class counsel in the *Broin* litigation have gone unanswered *See* Flory Decl Ex D Indeed, Ms. Duncan's counsel was forced to subpoena *Broin* class counsel to obtain information relating to the *Broin* settlement *See* Flory Decl Ex E

[5] NWA's citation to *Great Rivers Co-op v Farmland Indus*, 120 F 3d 893 (8th Cir 1997), is unavailing The plaintiff there appealed a district court's grant of summary judgment on timeliness grounds *Id* at 894 At the same time the



HAGENS BERMAN LLP
Attorneys at Law

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1    In another effort to inject the merits of Ms. Duncan's case, NWA argues that, based on the

2    testimony of the Rule 35 "Independent" Medical Examiner, Garrison Ayars, M.D., Ms Duncan is

3    "uninjured." Def Mem. at 29:4-6. Though Ms. Duncan disagrees with this conclusion, it does

4    nothing to undermine her adequacy to pursue class recovery for medical monitoring, which does not

5    require proof of a present physical injury. *See, e g , Durfey v E I DuPont de Nemours Co* , 59 F 3d

6    121, 122 n.1 (9th Cir. 1995) (applying Washington law), *Carey v. Kerr-McGee Chem Corp* , 999 F

7    Supp. 1109, 1999 (N.D Ill. 1998) (applying Illinois law). Because Ms Duncan proposes that

8    individual claims to recover damages for physical injuries should be addressed separately in a

9    bifurcated proceeding (*see infra* at 30-33), it is immaterial to her adequacy to represent the class that

10   NWA has found an expert willing to state that Ms. Duncan has no such injury [6]

11   **B.    The Court Can Certify a Rule 23(b)(3) Class for Medical-Monitoring Damages**

12       NWA challenges the predominance and superiority elements of Rule 23(b)(3)

13       **1.    Common questions exist and will predominate at trial**

14       NWA contends, incorrectly, that there are no legal or factual questions common to class

15   members' claims for liability and medical-monitoring relief

16            **a.    Applying the laws of the seven states does not render class certification
17                  inappropriate**

18                 **(1)    NWA has already conceded that class members' place of residence
                           determines the law governing their claims**

19       NWA argues here that determining the applicable state law governing each class member's

20   claims turns on individual issues. Tellingly, however, NWA asserts a different position elsewhere

21   NWA points out here that when considering state-law claims, the Court applies the forum state's

22   choice-of-law rules. Def Opp. at 13.22-23  Under this analysis, the rights and liabilities of the

23   parties are determined by "local law of the state which, with respect to that issue, has the most

24

25   district court granted summary judgment as to the named plaintiff's claim it also *dismissed* his class claims  *Id*  at 895-
     96  Notably, the plaintiff had not moved for class certification nor did the ruling discuss any aspect of class certification

26   [6] Ms Duncan also has reason to believe that NWA's "Independent" Medical Examiner was in fact not so
     independent, but that is an issue for another day

PLAINTIFF'S REPLY MEMORANDUM IN                    - 6 -
SUPPORT OF MOTION FOR CLASS
CERTIFICATION



OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623 7292 • FACSIMILE (206) 623 0594

1271 10 0038 MTN DOC

1   significant relationship to the occurrence of the parties ...." Def Opp. at 14:1-5 (citing *Williams v*
2   *State of Washington,* 76 Wn App 237, 242, 885 P.2d 845 (1994)). NWA has already identified
3   which law *it believes* applies to class members' claims. NWA filed two motions for partial summary
4   judgment (relating to statute of limitations and workers-compensation laws) concurrently with its
5   class-certification opposition  Both motions seek summary judgment against Ms. Duncan's claims
6   based on the state law of Washington, where Ms Duncan resides. Assuming that NWA did not offer
7   its motions as pointless exercises for the Court, it admits that a class member's place of residence
8   provides the applicable law under Washington choice-of-law principles  Ms Duncan concurs and
9   thus did not dispute that Washington law governs her claims.[7]

10          **(2)    Ms. Duncan's negligence claims present common questions of law**

11          As if this would defeat class certification, NWA states "[a]t a minimum, this Court would be
12   required to apply the law of at least the seven states enumerated by Plaintiff in her class definition
13   ...." Def Opp  at 14:15-17. For support, NWA cites examples where courts have declined to certify
14   nationwide classes involving the laws of 50 states, but ignores that certification of multistate classes
15   is a simpler matter where, as here, the number of state laws at issue is small.

16          Further, variations in the laws of these seven states are minimal and do not undermine pre-
17   dominance of common questions at trial. The elements of a negligence cause of action are identical
18   in each of the seven states where class members reside.  Courts have noted that "the standard for
19   ordinary negligence does not significantly differ throughout the country, and the differences that do
20   exist can be remedied through careful instructions ...." *In re Copley Pharms , Inc* , 158 F.R.D. 485,
21   491 (1994)  In all seven states the tort of negligence is established by demonstrating duty, breach,
22   causation and damages [8]  The law as to an employer's duty to its employees is identical as well  Not

23

24          [7] This renders disingenuous NWA's assertion that "unique characteristics of each flight attendant's claim" would
determine the choice of law (Def. Opp  at 14 9-10)  NWA continued this theme by musing whether U.S  law applies at
25   all.  *Id*  at 14 n 10  NWA cannot have it both ways

26          [8] *See Huggins v  Longs Drug Stores California, Inc* , 6 Cal  4th 124, 862 P 2d 148, 129 (1993) (stating the elements
of negligence as duty, breach, causation and damages), *Smith v  Cutter Biological,* 72 Haw  416, 823 P 2d 717, 720
(1991) (same), *Corgan v  Meuhling,* 143 Ill  2d 296, 574 N E 2d 602, 604 (1991) (same), *Hartford Fire Ins  Co  v
Walter Kidde & Co* , 120 Mich. App  283, 328 N W 2d 29, 33 (1982) (same), *Siler v  Principal Fin  Secs , Inc* , 2000

PLAINTIFF'S REPLY MEMORANDUM IN                    - 7 -
SUPPORT OF MOTION FOR CLASS
CERTIFICATION



OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1  surprisingly, each of the states has stated, unequivocally, that an employer has a duty to provide a

2  safe and hazard-free work environment.[9]

3      The Washington supreme court has found that the failure to provide a smoke-free work envi-

4  ronment constitutes a *per se* breach of the duty to provide a safe and hazard-free work environment

5  *McCarthy v Dept of Social & Health Servs* , 110 Wn.2d 813, 819, 759 P.2d 351 (1988)  NWA

6  asserts that the majority of the court "explicitly rejected" this opinion, which was written by the

7  minority. Def. Opp. at 16 n 20  But NWA overlooks that the supreme court subsequently affirmed

8  this conclusion  *See Aviation West Corp  v. Department of Labor & Indus* , 138 Wn.2d 413, 434,

9  980 P.2d 701 (1999)  In *Aviation West*, cigarette manufacturers and certain companies challenged a

10  regulation addressing smoking in private workplaces  Citing to *McCarthy,* the court stated, "[w]e

11  held that employers can be directly sued for illness arising out of workplace exposure to tobacco

12  smoke when such illness is not an occupational disease that falls within the basic coverage of the

13  Washington Industrial Insurance Act, RCW Title 51." 138 Wn.2d at 434.[10]

14  Minn App Lexis 1239 at *4-5 (Dec 12, 2000) (same), *Denman v Coppola Gen Contr Corp* , 256 A D 1050, 683 N Y.S 2d 617, 618 (1998) (same), *Nivens v 7-11 Hoagy's Corner*, 133 Wn 2d 192, 198, 943 P 2d 286 (1997) (same)

15  [9] *See, e g* , *State Compensation Ins Fund v Operated Equip Co* , 265 Cal. App 2d 759, 71 Cal Rptr 531, 533-34
16  (1968) (finding that the presence on the jobsite of a crane deficient in safety standards may "be a breach of [employer's] statutory duty to provide its employees with a safe place to work" and "[t]hus, the issue of [the employer's] negligence and its effect is like the issue of due care in the ordinary negligence case, and is one solely for the jury, unless reasonable
17  men could not differ as to the result "), *Asaeda v Haraguchi*, 37 Haw 556, 564-65, 1947 Haw Lexis 9 at *13 (1947) ("it is the duty of an employer to furnish his employee a safe place in which to do his work"), *Walsh v West Baden Springs
18  Co* , 291 Ill 34, 125 N E 727, 728 (1919) ("By the common law the defendant was bound to use reasonable care to pro-
vide a safe scaffold upon which the employee was to work. That duty is one resting upon the employer      [If the em-
ployee] suffers an injury from a neglect of the duty the employer is liable "), *Dehtiar v Mietkowski*, 372 Mich 527, 127
19  N W 2d 388, 390 (1964) ("[u]nquestionably, an employer has a duty to furnish a reasonably safe place to work and to
furnish reasonably safe tools and appliances"), *Dayton Hudson Corp  v Johnson*, 528 N W 2d 260, 262 (1995) ("[a]s a
20  corporate employer, Dayton's has a duty to its employees to provide a safe work environment"), *Mordkofsky v  V C V
Dev Corp* , 76 N Y 2d 573, 563 N E 2d 263, 265 (1990) ("[o]ur holdings reflect the clear legislative history of sections
21  200, 240 and 241 of the Labor Law, which demonstrates that the Legislature's principal objective and purpose underly-
ing these enactments was to provide for the health and safety of employees  Section 200 codifies the common-law duty
22  of an employer to provide employees with a safe place to work "), *McCarthy v  Dept of Social & Health Servs* , 110
Wn 2d 812, 814, 759 P 2d 351 (1988) ("the State      owes an employee a duty to provide a safe place to work")

23  [10] Other states have recognized the important public policies behind banning smoking in the work environment, and
it thus is clear that if presented with the same issue before the court in *McCarthy,* those states would no doubt find a *per
24  se* breach  For example, in *Hentzel v Singer Co* , 138 Cal App 3d 290, 188 Cal Rptr. 159 (1982), an employee sued
his former employer alleging that he was wrongfully terminated because he had complained about secondhand smoke in
25  the workplace  The California Court of Appeals discussed the definitions OSHA has provided for "'safe,' 'safety,' and
'health' as applied to an employment or a place of employment as meaning 'such freedom from danger to the life safety,
or health of employees as the nature of the employment reasonably permits '"  *Hentzel*, 188 Cal Rptr at 162 n 2  And
26  while the court noted that "[i]t does not appear that there exist any [OSHA] standards or [OSHA] orders applicable to
tobacco smoke in working environments such as Hentzel's," it did find that "there is a developing body of law in other
jurisdictions which recognizes an obligation on the part of an employer under some circumstances to protect employees
from health hazards which may be posed by cigarette smoking " *Id* (citing *Shimp v  New Jersey Bell Telephone Co* ,

PLAINTIFF'S REPLY MEMORANDUM IN          - 8 -
SUPPORT OF MOTION FOR CLASS
CERTIFICATION



HAGENS BERMAN LLP
Attorneys at Law

OFFICES IN SEATTLE  PHOENIX  LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623 7292 • FACSIMILE (206) 623 0594

1    NWA nonetheless contends that Ms. Duncan does not "pursue any recognized cause of

2    action for negligence." Def. Opp at 15·9; *see also* Def Opp at 17:24 (Ms. Duncan is asking the

3    Court to "recognize new state law causes of action"). But negligence law and its elements are

4    deeply rooted in all the seven states involved So too is the duty to provide a safe work environment

5    Just as Ms. Duncan has always maintained (*see* Def. Opp. at 36·12-17), her negligence claim is just a

6    "run-of-the-mill personal injury case." Employers have a duty to provide a safe work environment

7    in every state where a putative class member resides. Ms. Duncan and her fellow flight attendants

8    allege that NWA breached that duty by allowing carcinogens to foul the aircraft cabin air. There is

9    nothing "novel" about this claim.

10    These legal challenges to the merits of Ms Duncan's claims serve to identify issues that are

11    common to all class members. For example, NWA urges that as to negligence, "[i]f Plaintiff's

12    theory is .. that merely permitting smoking aboard an aircraft is a breach of a legal duty, then the

13    claim appears to be meritless as a matter of law across all jurisdictions." Def. Opp. at 23.5-7, *see*

14    *also id* at 15·9 But whether the claim is "meritless as a matter of law across all jurisdictions" is a

15    common issue that will be resolved on dismissal motions, not on class certification. *Cf., Linder v*

16    *Thrifty Oil Co*, 23 Cal 4th 429, 2 P.3d 27 (2000) ("[w]hen the substantive theories and claims of a

17    proposed class suit are alleged to be without legal or factual merit, the interests of fairness and effi-

18    _____

145 N J Super 516, 368 A 2d 408, 415-16 (1976), *Parodi v Merit Systems Protection Bd*, 690 F 2d 731 (9th Cir 1982),
19    *Vickers v Veterans Adm*, 29 F E P. Cases 1197, 30 E P D ¶¶ 27, 352 (W D Wash 1982)) The court affirmatively
stated that California "has long maintained a public policy of protecting the right of employees to voice their
20    dissatisfaction with working conditions" and that "the safety of employees in the work place has long been a matter of
prime legislative concern " *Id* at 162, 164 (collecting statutes) And thus, according to the court, "[i]t requires little
analysis to perceive that the legislative purpose underlying these provisions would be substantially undermined if
21    employers were permitted to discharge employees simply for protesting working conditions which they reasonably
believe constitute a hazard to their own health or safety, or the health or safety of others " *Id* at 164

22    Likewise in Michigan, the court in *Hall v Hackley Hosp*, 210 Mich App 48, 532 N W 2d 893 (1995), was faced
with a claim arising from secondhand smoke in the work environment There, an employee sued her employer for
23    failing to accommodate her disability, *i e*, allergy to tobacco smoke The court determined that there were unique
reasons to permit smoking in the work environment arising from "the special needs of the psychiatric patients at the
center " *Hall*, 532 N W 2d at 897 ("Because of the patients' acute psychotic illnesses, there are sound medical reasons
24    for permitting the patients to smoke in designated areas Balancing plaintiff's interest in imposing a complete ban on
smoking against the patients' interest in permitting smoking in limited areas, we conclude that the interests of the
25    patients, on balance, must prevail ") The court made clear, however, that was strictly limited to that case *Id*

Thus, while Washington may be the one among the seven states to have found a smoke environment filled with
26    secondhand smoke is a *per se* breach of the employer's duty to provide a safe and hazard-free work environment, other
states have indicated that they too would find such a breach

PLAINTIFF'S REPLY MEMORANDUM IN                           - 9 -
SUPPORT OF MOTION FOR CLASS
CERTIFICATION



OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

ciency are furthered when the contention is resolved in the context of a formal pleading (demurrer) or motion (judgment on the pleadings, summary judgment, or summary adjudication) that affords proper notice and employs clear standards").

### (3) Ms. Duncan's claim for medical monitoring presents common questions of law

NWA next asserts that many courts have "expressly declined to recognize medical monitoring as a stand-alone cause of action, particularly where there is no present physical injury." Def. Opp. at 18 (collecting cases). But the majority of NWA's cases are from jurisdictions unrelated to this lawsuit, *see id* (citing cases applying law of Nevada, Nebraska, Virginia, West Virginia, and Kentucky), and are irrelevant to this motion.

What is relevant, however, is the law of the states where class members reside  The seven states' positions on medical monitoring are easily categorized:  (i) states that recognize medical monitoring as a cause of action; (ii) states that recognize it as a form of relief; and (iii) states that have given no indication.  Because this litigation encompasses only seven states, categorizing their law on this issue is not an onerous task

### (a) Illinois, New York and Washington recognize medical monitoring as a cause of action and without any present physical injury

Three of the seven states, Illinois, New York and Washington, recognize medical monitoring as a separate cause of action and do not require a present physical injury.  Courts applying Illinois law recognize medical monitoring as a cause of action with no requirement that a physical injury be present.  The court in *Carey v  Kerr-McGee Chem. Corp* , 999 F. Supp. 1109 (N.D Ill. 1998), while noting that no Illinois court had ruled on the appropriateness of medical monitoring, determined that "if faced with the precise issue now before the court, the Illinois Supreme Court would uphold a claim for medical monitoring without requiring plaintiffs to plead and prove either a present injury physical injury or a reasonable certainty of contracting a disease in the future." *Id.* at 1119 (citing *In re Paoli R  Yard PCB Litig* , 916 F.2d 829, 852 (3rd Cir  1990)).  *Kerr-McGee* cited to numerous

---

PLAINTIFF'S REPLY MEMORANDUM IN
SUPPORT OF MOTION FOR CLASS
CERTIFICATION

- 10 -



1271 10 0038 MTN DOC

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1   policy reasons that medical monitoring is a sound cause of action: "Medical monitoring claims

2   acknowledge that, in a toxic age, significant harm can be done to an individual by a tortfeasor,

3   notwithstanding latent manifestation of that harm." *Id.* (citing *Paoli*, 916 F.2d at 852)   *Kerr-McGee*

4   was cited as authoritative in *Dhamer v. Bristol-Meyers Squibb Co*, 183 F.R.D. 520 (N.D. Ill. 1998),

5   where the court noted "[a]lthough the viability of a cause of action for medical monitoring has not

6   yet been addressed in many jurisdictions, courts that have recognized the claim have concluded that

7   a plaintiff may recover the cost of diagnostic medical evaluation proved to be proximately caused by

8   the defendant's wrongdoing." *Id.* at 523 n.2 (citing *Paoli*, 916 F.2d at 852; *Carey v Kerr-McGee*

9   *Chem Corp*).[11]

10       Like Illinois, New York has recognized medical monitoring as a cause of action   In *Patton v.*

11   *General Signal Corp.*, 984 F. Supp. 666, 672 (W D N.Y. 1997), plaintiff filed a cause of action for

12   negligence for asbestos exposure. He sought judgment against one co-defendant for costs of future

13   medical monitoring so that any asbestos-related illness that develops can be detected at an early

14   stage   *Id*   The court relied on federal court and state court precedent to find that "'*Askey* [*v*

15   *Occidental Chem. Corp*, 102 A.D.2d 130, 477 N.Y.S.2d 242 (4th Dept. 1984)] accurately represents

16   a growing national acceptance of . . a claim [for medical monitoring], and would be embraced by

17   the New York Court of Appeals " *Patton*, 984 F Supp. at 674 (citing *Gibbs v E.I. DuPont de*

18   *Nemours & Co.*, 876 F Supp. 475, 478-79 (W.D.N.Y. 1995))   Moreover, the court found that

19   "having reviewed New York case law on the subject, I do not agree with [defendant]'s contention

20   that plaintiff must establish that asbestos is demonstrably present in his body." *Patton*, 984 F. Supp

21   at 673   And stating that "[a]lthough the [*Askey*] court made it clear that it is not easy to prevail on a

22   claim for medical monitoring in the absence of a present injury, the court did not make the clinically

23   demonstrable presence of a toxic substance in the plaintiff's body a *sine qua non* of such a claim "

24   *Id*   Finally, *Patton* noted that "the parties also dispute the extent to which plaintiff was exposed to

25   asbestos in the first place. If plaintiff's allegation that he was 'showered' with asbestos is true, it

26

---

[11] For reasons not applicable here (*see infra* at 26), *Dhamer* declined to certify the medical-monitoring claim



HAGENS BERMAN LLP
Attorneys at Law

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623 7292 • FACSIMILE (206) 623 0594

1    may be unnecessary for him to prove that there is asbestos in his body, provided that he adduces

2    sufficient medical evidence that such a high level of exposure to asbestos makes medical monitoring

3    reasonably necessary." *Id.* at 674.

4         Like Illinois and New York, Washington recognizes medical monitoring as a cause of action

5    The Eastern District of Washington in *In re Hanford Nuclear Reservation Litig* , 780 F. Supp 1551,

6    1562 (E D. Wash. 1991), noted that "the court would indicate as a preliminary matter that it regards

7    claims in the nature of those sought (*see, e.g., In re Paoli R. R Yard PCB Litig* , 916 F.2d 829, 852

8    (3rd Cir 1990), *cert denied*, 111 S.Ct. 1584 (1991)) as being eminently sensible in this, a toxic tort

9    context, and fully within the purview of that state's law (Washington ...) which, where applicable, is

10   controlling " The court hence deemed a medical-monitoring cause of action to be viable.

11        NWA cites *Hanford*'s procedural history to contend that the issue of whether medical moni-

12   toring is a recognized cause of action remains is still undecided. Def. Opp. at 20 n.22  The *Hanford*

13   court ultimately dismissed the medical-monitoring claim on the grounds that CERCLA subsumed it.

14   780 F. Supp. at 1565  The Ninth Circuit subsequently overturned this dismissal in *Durfey*, finding

15   that "plaintiffs' medical monitoring claims do not 'challenge' any federal 'removal' or 'remedial'

16   action, [and thus] are not barred" by CERCLA  59 F.3d at 126  NWA's argument misreads *Durfey*

17   The court could have ruled that an action for medical monitoring, though not barred by CERCLA,

18   does not exist, or questioned the availability of such a cause of action and certified it to the state's

19   highest court – but it did not. Rather, *Durfey* acknowledged that "[m]edical monitoring is a recently

20   recognized tort providing for damages or equitable relief to plaintiffs who have yet to suffer a

21   cognizable toxic tort injury, but who are able to demonstrate that they face an increased risk of such

22   an injury as a result of a defendant's actions." 59 F.3d at 123 n 1 (citing *Paoli*, 916 F.2d at 852

23   (recognizing the weight of authority behind adopting a common-law tort of medical monitoring))

24        Tellingly, NWA miscites its two authorities that purportedly support the proposition that

25   Washington does not recognize a cause of action for medical monitoring. Def. Opp. at 20 (citing

26   *Koker v Armstrong Cork, Inc.*, 60 Wn. App. 466, 804 P.2d 659 (1991), *Sorenson v Raymark Indus ,*

PLAINTIFF'S REPLY MEMORANDUM IN            - 12 -
SUPPORT OF MOTION FOR CLASS
CERTIFICATION



OFFICES IN SEATTLE  PHOENIX  LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623 7292 • FACSIMILE (206) 623 0594

1271 10 0038 MTN DOC

*Inc.*, 51 Wn. App. 954, 756 P 2d 740 (1988))  But neither of these pre-*Hanford* cases discuss medical monitoring  Plaintiffs in these cases were seeking damages for "an increased risk of contracting cancer," as opposed to a monitoring program, resulting from their exposure to toxic substances.[12]  Courts distinguish these claims, finding that medical monitoring relief is recoverable but damages for an increased risk of contracting cancer typically are not. See, for example, *Carey v Kerr-McGee*, 999 F. Supp  at 1118-19 (discussing *Paoli*, 916 F.2d at 850-51).[13]

> **(b)    California, Michigan and Minnesota recognize medical monitoring as a compensable form of relief**

California recognizes medical monitoring as a compensable form of relief.  In *Potter v Firestone Tire & Rubber Co* , 6 Cal. 4th 965, 863 P.2d 795 (1993), adjacent landowners to a landfill brought a claim alleging toxic exposure  None of the landowners currently suffered from any cancerous or pre-cancerous condition but each faced an enhanced risk of developing cancer from the exposure. The California court found that "[o]n the issue of medical monitoring costs, we hold that such costs are a compensable item of damages in a negligence action where the proofs demonstrate, through reliable medical expert testimony, that the need for future monitoring is a reasonably certain consequence of the plaintiff's toxic exposure and that the recommended monitoring is reasonable "  863 P 2d at 800. In addition, the court found that no need to prove a present physical injury  "That medical monitoring may be called for as a result of defendant's tortuous conduct, even in the absence of actual physical injury, was compellingly demonstrated in *Friends for All Children, Inc  v Lockheed Aircraft Corp* , 746 F.2d 816 (D.C. Cir 1984)." *Potter*, 863 P.2d at 823

---

[12] NWA also miscites to *Koker*, 804 P 2d at 659 & n 9 for the proposition that the case discusses "Washington's requirement that plaintiffs demonstrate that her risk of exposure has doubled in order to state a cause of action"  Def Opp at 20 18  *First*, there is no footnote 9 in the *Koker* case nor is any portion of the opinion reported at 659  *Second*, and without the benefit of knowing from where this proposition is pulled, the "cause of action" to which the *Koker* court was no doubt referring was to an "increased risk of cancer," which again, is not a stated cause of action in this case

[13] Finally, NWA should not be heard to complain that this Court is called on to determine the law of the State of Washington regarding medical monitoring  Ms  Duncan filed her claim in Washington State Court, and NWA then removed it to federal court  The Northern District of Illinois in *Kerr-McGee* rejected this very argument  Defendants there argued that the district court was not in a position to determine whether the state court would allow a claim for medical monitoring  The court responded, "[plaintiffs] filed their suit in state court, and it was defendants who removed it to this court  It is disingenuous that, having elected to proceed here, defendants now argue that this court should not reach the issue "  *Kerr-McGee Chem  Corp* , 999 F  Supp  at 1119

PLAINTIFF'S REPLY MEMORANDUM IN
SUPPORT OF MOTION FOR CLASS
CERTIFICATION

- 13 -



HAGENS BERMAN LLP
*Attorneys at Law*

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1        Like California, Michigan treats medical monitoring as a form of relief. In *Meyerhoff v*

2  *Turner Const Co*, 210 Mich. App 491, 534 N.W 2d 204 (1995), a group of construction workers

3  alleged they were exposed to asbestos in the course of employment. The court stated "[w]e reaffirm

4  our prior holding that medical-monitoring expenses are a compensable item of damages where the

5  proofs demonstrate that such surveillance to monitor the effect of exposure to toxic substances, such

6  as asbestos, is reasonable and necessary " 534 N.W.2d at 206.[14] Accordingly, the court found that

7  "the trial court erred in requiring the presence of an underlying injury or manifestation of disease

8  before recognizing a claim for medical monitoring or surveillance. We conclude that medical

9  monitoring constitutes a viable legal claim upon which relief may be granted." *Id* [15]

10       Minnesota law is similar. In *Werlein v United States*, 746 F. Supp. 887, 890 (D. Minn.

11  1990), *vacated on other grounds*, 793 F Supp. 898 (1992), citizens who resided near two military

12  munitions plants that discharged certain hazardous wastes sued the U.S. government. Plaintiffs

13  asserted several statutory environmental claims as well as common-law claims. *Id.* Among the

14  requested remedies was a "medical monitoring fund to be financed by defendants, that [would] reim-

15  burse persons exposed to contaminated water for the costs of medical screening." *Id.* at 891  In

16  analyzing the request for medical-monitoring relief, the court found that medical monitoring was not

17  an appropriate *claim* under the numerous federal and statute regulations cited by the plaintiffs. *Id* at

18  904 ("the Court will dismiss plaintiffs' claim to recover damages for medical monitoring under

19  section 9607") The court approved it, however, as relief for a tort claim: "[p]laintiffs argue in the

20  alternative that they are entitled to recover the costs of future medical monitoring as tort damages

---

[14] The court went on to articulate five factors that may be considered in determining whether medical monitoring expenses are reasonable and necessary These factors are identical to those set forth in *Potter  Compare Meyerhoff*, 534 N W 2d at 206, *with Potter*, 863 P 2d at 823

[15] On appeal to the Michigan supreme court, the court vacated the judgment on the grounds that, "[t]he factual record is not sufficiently developed to allow a medical monitoring damages  Accordingly, we VACATE that portion of the Court of Appeals decision which holds that medical monitoring expenses are a compensable item of damages  The circuit court's decision to grant the motion for summary disposition was based, in part, on its having taken judicial notice of certain facts  The Court of Appeals correctly held that the Court should not have taken judicial notice, making the grant of summary disposition improper  Thus, the case is remanded to the circuit court for further proceedings " *Meyerhoff v Turner Constr Co*, 456 Mich 933, 575 N W 2d 550 (1998)  The Michigan supreme court did not rule that medical-monitoring damages were not recoverable as a matter of law, and instead remanded for further factual development, thereby indicating that medical monitoring is a recognized item of damages in Michigan

PLAINTIFF'S REPLY MEMORANDUM IN      - 14 -
SUPPORT OF MOTION FOR CLASS
CERTIFICATION

HAGENS BERMAN LLP
*Attorneys at Law*

OFFICES IN SEATTLE  PHOENIX  LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623 7292 • FACSIMILE (206) 623 0594

1   under the common law   *The Court agrees.* Assuming that a given plaintiff can prove that he has

2   present injuries that increases his risk of future harm, medically appropriate monitoring is simply a

3   future medical cost, which is certainly recoverable." *Id* at 904 (emphasis added). The court con-

4   tinued that "[t]here is ample authority for the proposition that upon proper proof, injured plaintiffs

5   may recover damages for medical monitoring." *Id.* at 904-5 (citing *Merry v  Westinghouse Elec*

6   *Corp* , 684 F. Supp  847, 849-52 (M.D Pa. 1988); *Ayers v  Jackson Township*, 106 N.J. 557, 525

7   A.2d 287 (1987)) [16]

8        NWA cites to *Thompson v. American Tobacco Co* , 189 F.R.D. 544 (D. Minn. 1999), for the

9   proposition that medical monitoring is not an independent theory of recovery in Minnesota. Def

10   Opp. at 19  While true, *Thompson* concurred that medical monitoring was a valid form of relief

11   189 F R D  at 555 n.6 & 556.  The court noted that "[b]oth parties agree that ... *Redland Soccer*

12   *Club, Inc  v  Dep't of the Army*, 548 Pa  178, 696 A.2d 137, 145-46 (Pa. 1997), controls," and thus it

13   analyzed whether the claims were susceptible to class-wide proof under the *Redland Soccer Club*

14   elements, which requires plaintiff to "prove, *inter alia*, that defendants caused plaintiff's exposure to

15   a proven hazardous substance "  189 F.R.D. at 552  Hence, the court then proceeded to determine

16   whether the plaintiffs could prove that the cigarette manufacturers caused plaintiffs' exposure to

17   the hazardous substances on a class-wide basis. *Id* [17]

18        **(c)**    **Hawaii has yet to address the issue of medical monitoring**

19        Hawaii has yet to recognize a cause of action or remedy for medical monitoring  For

20   purposes of this motion, however, the Court must assume that cognizable claims are stated. *Dhamer*

21   *v  Bristol-Meyers Squibb, Co* , 183 F R D  at 524 (citing *Eisen*, 417 U.S. at 177-78)  Whether

22   Hawaii would recognize a claim or relief for medical monitoring is a legal issue that the Court can

23   resolve in a separate motion. *Cf* , *Linder*, 2 P.3d at 34-35 (*see supra* at 9).  Like the other courts as

24

25       [16] For reasons not applicable here (*see infra* at 27 n 31), *Werlein* denied class certification

26       [17] The *Thompson* court then began its analysis of whether plaintiffs' were entitled to medical monitoring as a class-wide remedy for defendant's violations of the Minnesota Consumer Protection statute  As discussed *infra* at 27 n 31, the reasons the court determined a medical monitoring remedy was not appropriate for class treatment do not apply here

PLAINTIFF'S REPLY MEMORANDUM IN
SUPPORT OF MOTION FOR CLASS
CERTIFICATION

- 15 -



HAGENS BERMAN LLP
*Attorneys at Law*

1271 10 0038 MTN DOC

1   set forth above, assuming that Hawaii would recognize medical monitoring, it would likely follow

2   the *In re Paoli* and *Potter* standards for recovery. *See supra* at 14 n 14   Medical monitoring for

3   Hawaii class members would thus present common issues.

4   **(4)   NWA's purported affirmative defenses raise common legal issues**

5   Though NWA points to its purported affirmative defenses as additional individual issues, in

6   fact these purported defenses will create common issues applicable to all class members. NWA's

7   Answer lists as defenses: (i) preemption under the Airlines Deregulation Act and/or the Railway

8   Labor Act, and (ii) primary jurisdiction   *See* NWA Answer Third, Fourth and Fifth Defense. Like

9   the "military contractors' defense" in *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 151

10  (2nd Cir. 1987) (use of class-action device "was justified here in light of the centrality of the military

11  contractor defense to the claims of all plaintiffs"), these defenses all involve questions of law that

12  apply equally to every class member, regardless of residence   These affirmative defenses hence

13  raise even more common issues.

14  Other alleged defenses may create legal questions that are common to all class members

15  within a particular state, but this does not defeat class certification. NWA points out, for example,

16  that the statute-of-limitation periods for negligence actions differ among the seven states. Def. Opp

17  at 21:8-9   Maybe so, but NWA cannot show how these variations create disabling individual issues

18  Whether a particular limitations period is two years (*e g*, Illinois), three years (*e.g*, Michigan, New

19  York and Washington), or otherwise, the Court can readily apply the pertinent period to each state's

20  class members. Moreover, any individual issues relating to the statute of limitations can be

21  addressed separately in bifurcated proceedings. *See infra* at 31.

22  As to the seven states' comparative-fault rules, the Court can similarly apply them to the

23  respective class members. The rules, as established by NWA, are quite simple. *See* Def. Opp   at

24  21 15-21. Three of the states have enacted "pure" comparative fault where class members' alleged

25  negligence reduces the amount recoverable while the four other states would bar recovery to class

26  members who are more than 50 percent negligent.  *Id*   Only two categories thus encompass all class

PLAINTIFF'S REPLY MEMORANDUM IN          - 16 -
SUPPORT OF MOTION FOR CLASS
CERTIFICATION



OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623 0594

1    members. This is hardly problematic.[18]

2    Next, as shown below, all states except Hawaii have found exceptions to the exclusivity

3    provisions of the workers' compensation statutes where the employer knows but disregards the

4    likelihood that injury will occur.

5                    **(a)    Workers' compensation acts are not an exclusive remedy
                             where the employer knows injury will occur but willfully
6                            disregards that knowledge**

7    The laws related to NWA's workers' compensation defense are sufficiently similar to present

8    common questions  Each state employs the "arising out of" and "in the course of" employment

9    language to determine whether a particular injury or disease falls within the exclusivity provisions of

10   its workers' compensation statute.[19]  And five states employ similar knowing-injury exceptions to

11   their respective statute's exclusive-remedy provision

12   As set forth in Ms. Duncan's brief opposing partial summary judgment regarding workers'

13   compensation preemption (filed March 12, 2001), Washington has such an intent exception.  The

14   Washington code specifically provides that "[i]f injury results to a worker from the deliberate

15   intention of his or her employer to produce such injury, the worker or beneficiary ... also have a

16   cause of action against the employer as if this title had not been enacted, for any damages in excess

17   of compensation and benefits paid or payable under this title." RCW 51.24.020.  As the court set

18          [18] And because the circumstances relevant to comparative fault are the same for all class members (*see infra* at 28),
     neither does the defense raise individual factual issues to defeat certification

19          [19] *See* Cal Lab Code § 3600 ("Liability for the compensation provided by this division    shall    exist against an
20   employer for any injury sustained by his or her employees *arising out of and in the course of the employment*     (2)
     Where at the time of the injury, the employee is performing services growing out of and incidental to his or her employ-
21   ment and is acting within the course of his or her employment     (3) Where the injury is *proximately caused by the em-
     ployment* ", (emphasis added), [Hawaii] HRS 386-3 ("[i]f an employee suffers personal injury either by accident *arising
22   out of and in the course of the employment or by disease proximately caused* by or resulting from the nature of the em-
     ployment", (emphasis added), [Illinois] 820 ILCS 305/5, 305/11, and *O'Donnell v City of Chicago*, 126 Ill App 3d
23   548, 467 N E 2d 971, 974 (1984) ("[w]hether plaintiff was engaged in the line of duty is tested by whether plaintiff's
     activity 'arise[s] out of and in the course of employment '"), [Michigan] MSA § 17 237(301) ("[a]n employee, who
     receives a personal injury arising out of and in the course of employment by an employer who is subject to this act at the
24   time of the injury, shall be paid compensation as provided in this act"), Minn Stat § 176 011, subd  16 (1990) and *Foley
     v Honeywell, Inc*, 488 N W 2d 268, 271 (Minn  1992) ("in order to be a compensable injury under the act, an injury
     must arise out of the employment, must be in the course of the employment and must not come within the 'assault excep-
25   tion'"), *Johannesen v New York City Dep't of Housing Preservation & Dev*, 84 N Y 2d 129, 638 N E 2d 981, 983
     (1994) ("[t]o effectuate the statutory objectives, Workers' Compensation Law § 21(1)    creates a presumption that
26   injuries 'arising out of and in the course of' employment are compensable under section 10(1) as 'accidents'"), RCW
     51 08 140 ("occupational disease" defined as a "disease or infection as arises naturally and proximately out of
     employment")

PLAINTIFF'S REPLY MEMORANDUM IN          - 17 -
SUPPORT OF MOTION FOR CLASS
CERTIFICATION


HAGENS BERMAN LLP
Attorneys at Law

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 ▪ SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ▪ FACSIMILE (206) 623-0594

1271 10 0038 MTN DOC

forth in *Birklid v Boeing Co.*, 127 Wn 2d 853, 865, 904 P.2d 278 (1995), "the phrase 'deliberate intention' in RCW 51 24.020 means the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge."

Illinois has a similar exception In *Pechan v. DynaPro, Inc*, 251 Ill App. 3d 1072, 622 N.E.2d 108, 119 (1993), the court allowed an employee to bring a common-law cause of action against an employer if the employee proves "that the injury was not accidental." (Citing *Meerbrey v Marshall Fields & Co*, 139 Ill.2d 455, 564 N.E.2d 1222, 1225 (1990)). *Meerbrey* explained the term "accidental" in this context, concluding that "[t]he exclusivity provisions will not bar a common law cause of action against an employer ... for injuries which the employer or its alter ego intentionally inflicts upon an employee or which were commanded or expressly authorized by the employer." *Meerbrey*, 564 N.E.2d at 1226 (citing 2A A. LARSON, LAW OF WORKMEN'S COMPENSATION § 68.21 (1988), and *Collier v Wagner Castings Co.*, 81 Ill.2d 229, 239-40, 408 N.E.2d 198 (1980)) *Meerbrey* continued, "[t]he rationale advanced in support of this rule is that the employer should not be permitted to assert that the injury was 'accidental,' and therefore under the exclusive provisions of the Act, when he himself committed the act." *Id* (citing *Jablonski v Mutlack*, 63 Ill. App. 3d 908, 380 N.E.2d 924 (1978), 2A A. LARSON, LAW OF WORKMEN'S COMPENSATION § 68.21 (1988)). Ms. Duncan has pled such intent.

Minnesota also has an intent exception *See Parker v. Tharp*, 409 N.W.2d 915, 918 (1987) (citing *Boek v Wong Hing*, 180 Minn 470, 231 N.W. 233 (1930) (holding that an employer who intentionally assaulted an employee could not avoid common-law liability on the ground that worker's compensation was available)) According to *Parker*, "[i]f the employer displays 'malicious or deliberate intent,' an employee has the option of suing for damages at common law or proceeding under the worker's compensation statutes " 409 N.W.2d at 918

New York likewise recognizes an intent-to-injure exception. *See Acevedo v Consolidated Edison Co*, 151 Misc 2d 347, 572 N.Y.S.2d 1015, 1018 (1991) (a deliberate act on the part of the employer that was aimed at causing harm to a particular employee is excluded from the workers'



HAGENS BERMAN LLP
*Attorneys at Law*

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623 7292 • FACSIMILE (206) 623-0594

compensation provisions).[20] Michigan's workers-compensation statute also exempts intentional injuries from the statutory exclusivity provision.[21]

### (b)   Workers compensation is not the exclusive remedy if employer's motive violates public policy

A sixth state, California, does have an exception to workers' compensation exclusivity that also applies here (NWA's contentions notwithstanding). The California Supreme Court ruled in *Charles J Vacanti, M D., Inc. v State Comp. Ins Fund*, 24 Cal. 4th 800, 14 P.3d 234, 251 (2001), that "an employer or insurer may not use the exclusive remedy provisions as a 'get out of jail free' card by characterizing its acts as a normal employer or insurer activity." The label that the employers applies to its conduct is not controlling. *Id*, 14 P.3d at 251 (quoting *Fermino v Fedco, Inc*, 7 Cal. 4th 701, 718, 872 P.2d 559 (1994))  Rather, the question is "whether the alleged acts, bereft of their motivation, 'can ever be viewed as a normal aspect of the employer relationship' or claims process." *Id* (quoting *Fermino*). Thus, "where the tortious act is not closely connected to a normal employer or insurer action, it is not subject to exclusivity." *Id* (citing *Marsh v McLennan, Inc v. Superior Court*, 49 Cal. 3d 1, 10-11, 774 P.2d 762 (1989)).

The court also observed that "[i]n addition to the acts themselves, the motive element of a cause of action may insulate that cause of action from the purview of the exclusive remedy provisions " *Id*  And thus, "[a]ny inquiry into an employer's motivation is undertaken not to determine whether the employer intentionally or knowingly injured the employee, but rather to ascertain whether the employer's conduct violated public policy and therefore fell outside the compensation

---

[20] *Acevedo* found that a "the part of the complaint that alleges for continued medical monitoring does not seek recovery for an injury compensable under the" workers compensation act  572 N Y S 2d at 1018  The court found that a claim for "medical monitoring is a claim for which the WCL does not provide a remedy " *Id*  And thus, it follows, the court found that "[c]ontinuous medical monitoring allowing for early detection and treatment of asbestos related disease may be sought by plaintiff-employees provided proper proof is adduced at trial supporting the need for such recovery " *Id*

[21] MSA § 17 237 (131) provides  "The only exception to this exclusive remedy is an intentional tort  An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury  *An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge*" (Emphasis added)  *See also Travis v Dreis & Krump Mfg Co*, 453 Mich. 149, 551 N.W 2d 132, 145 (1996) ("[a]n employer is deemed to have possessed the requisite state of mind when it disregards actual knowledge that an injury is certain to occur")

PLAINTIFF'S REPLY MEMORANDUM IN             - 19 -
SUPPORT OF MOTION FOR CLASS
CERTIFICATION



HAGENS BERMAN LLP
*Attorneys at Law*

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 Fifth Avenue, SUITE 2900 • Seattle, WA 98101
TELEPHONE (206) 623 7292 • FACSIMILE (206) 623 0594

1  bargain." *Id.* (quoting *Fermino*, 7 Cal. 4th at 714-15).  And thus, the court has "refused to bar both

2  statutory and tort claims where their motive element violates such a policy." *Id.* (collecting cases.)

3      As NWA established, California has chosen to ban smoking in most enclosed workplaces,

4  including bars and restaurants.  Def Opp. at 17:13-16 (citing Cal. Labor Code § 6404.5)  It would

5  thus be reasonable that an employer choosing to allow smoke in the workplace solely for profit,

6  despite knowing of health hazards and actual injury, violates California fundamental public policy

7      NWA focuses on cases where an employee's claim for workplace injuries related to tobacco

8  smoke were found compensable under a workers' compensation act  Def. Opp. at 22 1-14. But

9  these cases are distinguishable.  None of them indicate that the employee invoked the exclusivity

10  exception by asserting that the employer acted with intent to injure or that its acts violated public

11  policy  Moreover, none involved class certification and they thus offer little guidance in determining

12  class certification.  The merits of Ms. Duncan's claims, *i e*, whether they are preempted by a

13  workers' compensation act, is not before the Court on this motion.  Rather, the Court "must assume

14  cognizable claims "  *See Dhamer*, 183 F R.D. at 524 (*supra* at 15).[22]

15      In sum, the legal issues that NWA identifies do not defeat class certification  They are

16  common either to all class members or, at minimum, common to all class members within each of

17  the seven states

18          **b.    Individual issues of fact likewise do not preclude class certification**

19      NWA next asserts that "there are no significant questions of fact" common to the class. Def.

20  Opp. at 22 17-18  This argument fares no better.

21          **(1)    Proof of the class members' negligence claims turn on common
22                  questions of fact**

23      Ms. Duncan will prove the elements of her negligence claim – duty, breach, causation and

24  damages – with evidence that is common to all class members.[23]  She will prove breach with evi-

25  [22] And thus, even for Hawaii, which has not created any exclusivity exception, it is a common issue for all Hawaii
class members whether Hawaii's worker's compensation act preempts their claims

26  [23] As to the existence of NWA's duty to provide a safe workplace, this is a common legal question that Ms  Duncan
addresses *supra* at 7-10  Ms  Duncan will address damages, *i e*, her need for medical monitoring, *infra* at 25-27

PLAINTIFF'S REPLY MEMORANDUM IN           - 20 -
SUPPORT OF MOTION FOR CLASS
CERTIFICATION

1271 10 0038 MTN DOC

HAGENS BERMAN LLP
*Attorneys at Law*

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 Fifth Avenue, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623 7292 • FACSIMILE (206) 623-0594

1    dence that NWA permitted smoking on all of NWA's aircraft on its Trans-Pac routes, and that

2    tobacco smoke filled the cabin air on these aircraft at unsafe levels.[24] She will prove causation with

3    evidence that the dosage of toxins from months or years of exposure to in-flight tobacco smoke on

4    Trans-Pac flights created a significant risk of contracting serious illnesses that merit medical

5    monitoring And Ms. Duncan will prove damages with evidence that she will incur costs to monitor

6    her health for signs of any of these illnesses as a result of this increased risk. Ms. Duncan's proof to

7    date includes the expert testimony of her expert, James L. Repace, plus the personal knowledge of

8    herself and other Trans-Pac flight attendants who experienced first-hand the foul conditions that

9    flourished on Trans-Pac flights.

10    NWA disputes Ms. Duncan's evidence that a significant risk arises beginning at 587 hours of

11    exposure and attempts to discredit her expert, Mr. Repace. Def Opp. at 23, 25 In arguing that Mr

12    Repace's testimony is not accurate, NWA refers the Court to its briefing in its *Daubert* motion to

13    strike. *See* Def Opp at 23, 25. Ms Duncan has moved to strike NWA's *Daubert* motion to strike

14    on the grounds that it is premature and thus, inappropriate at this stage of the proceedings. *See*

15    Plaintiff's Mem in Supp of Motion to Strike Def.'s Motion to Strike the Declaration of James L.

16    Repace (filed March 1, 2001); Plaintiff's Mem. in Reply (filed March 15, 2001) As fully set forth

17    in Ms Duncan's briefing, at the class certification stage, the court is to examine (i) whether the

18    expert's methodology is sound; (ii) whether it will have any probative value; and (iii) whether it will

19    primarily use evidence that is common to the class and the Court is *not* to perform a *Daubert*

20    analysis. *See* Pltf's Mem in Supp. at 4.23 – 5:5.[25] Importantly, Ms. Duncan has established that

21    Mr Repace meets the standards set forth above.[26]

22

---

23    [24] Ms. Duncan will hence establish breach based on, among other things, NWA's company-wide policies and proce-
24    dures that exacerbated the unsafe work environment and contributed to the breach For example, evidence suggests that
      NWA had a "fuel conservation policy" that directed pilots to strictly limit use of air-conditioning packs, which inhibits
      the ventilation system *See* Declaration of Jeanne M Elliott ¶ 7 Evidence of this kind will establish breach class-wide

25    [25] *See also In re Polypropylene Carpet Antitrust Litig* , 996 F Supp. 18, 26 (N D Ga 1997)

26    [26] As explained in Ms Duncan's motion to strike NWA's *Daubert* motion and her reply memorandum, Mr
      Repace's methodology is sound as it is consistent with numerous peer-reviewed studies Moreover, his testimony is
      probative on the issue of second-hand smoke Finally, he does not use information solely related to Ms. Duncan but
      rather, information pertinent to the entire class In addition, while Ms Duncan reiterates that a *Daubert* analysis is

PLAINTIFF'S REPLY MEMORANDUM IN                - 21 -
SUPPORT OF MOTION FOR CLASS
CERTIFICATION



HAGENS BERMAN LLP
*Attorneys at Law*

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623 7292 • FACSIMILE (206) 623 0594

1271 10 0038 MTN DOC

1        And thus, contrary to NWA's contentions, Ms. Duncan does not ask this Court to blindly

2    accept Mr. Repace's report. Rather, she invites the Court to review the expert submissions in this

3    case to determine whether Mr. Repace's testimony is sound, probative and directed towards the

4    class. Illustrative on this point is *O'Connor v Boeing North Am , Inc.*, 184 F.R.D. 311 (C.D. Cal

5    1998). In *O'Connor*, defendant argued that the testimony of plaintiffs' experts were inaccurate in

6    that they used erroneous assumptions as opposed to actual test data. *Id* at 321. The defendant

7    moved for a *Daubert* hearing to the extent the Court considered any of the experts' opinions in

8    ruling on class certification  *Id*  The court refused to invoke *Daubert*, ruling it was "inappropriate"

9    on class certification  *Id*  The Court did address, however, "the sufficiency of Plaintiffs' evidence

10   submitted to demonstrate the reasonableness of its class definitions "  *Id.* at 321.  The court reviewed

11   the expert submissions and determined that, while the experts did rely on assumptions, they were

12   neither arbitrary nor did they call into question the model's validity.  *Id*  at 322.  Other challenges by

13   defendant, for example, that because plaintiffs' expert was not a toxicologist he had no authority to

14   judge the significance of health risk assessments, were dismissed as "unavailing" for purposes of a

15   class-certification motion. *Id* at 326-27.  Hence, the *O'Connor* court reviewed the expert testimony

16   for soundness but cautioned that any differences in the experts' testimonies "are issues that relate to

17   the merits of Plaintiffs' claims  The Court will thus not engage in a 'battle of the experts' at this

18   stage of the litigation "  *Id* at 324 [27]  This is the appropriate review on class certification

19        Mr Repace has determined that a *de manifestis* risk to class members for coronary health

20   death (it exceeds OSHA standards by a factor of 40%) and lung cancer death (it exceeds OSHA

21   regulations by a factor of 4%), is reached after 587 hours of exposure. Repace Decl. ¶ 84.[28]  This

22

---

23   inappropriate, she has amply demonstrated in her opposition to NWA's *Daubert* motion that, even if *Daubert* were being considered, Mr Repace more than passes the test

24   [27] *See also Caridad v Metro-North Commuter R R* , 191 F 3d 283, 293 (2nd Cir 1999), *Krueger v New York Tel Co* , 163 F R D  433, 440-41 (S D N Y 1995)

25   [28] Importantly, the 587 hours of exposure establishes the *de manifestis* risk level for death from heart disease and lung cancer  The number does not consider death from breast cancer, which is of viable concern  Moreover, the 587 hours of exposure does not account for *morbidity*, e g., heart attacks that do not result in death  Mr Repace's 587-hours-

26   of-exposure threshold is thus conservative as including these other risk factors significantly raises the risks  Repace Reply Rep ¶ 8



HAGENS BERMAN LLP
Attorneys at Law

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1    risk level *applies to all class members irrespective of any individual's baseline risk* Cognizant of
2    the increased risks resulting from the exposure and the fact that Mr. Repace's methodology is sound,
3    probative and directed at the class, NWA retorts to a nonsensical argument that the 587 hour *de*
4    *manifestis* risk level "has *no* recognition in any case law as the basis for liability." Def. Opp at
5    23:8-9. *First,* determining the increased risk for contracting disease is fundamental in a claim for
6    medical monitoring and hence, such a risk level is a requirement for liability. Indeed, as both *Potter*
7    and *Meyerhoff* establish (*see supra* at 14 n 14), factors to consider in a medical-monitoring claim are
8    "the significance and extent of the plaintiff's exposure to the chemicals," "the seriousness of the
9    diseases for which plaintiff is at an increased risk," and "the relative increase in the plaintiff's
10   chances of developing a disease as a result of the exposure." *Potter*, 863 P.2d at 823; *Meyerhoff*,
11   509 N W 2d at 850. Thus, the 587 hours is the threshold at which flight attendants are placed at an
12   *increased* risk of disease, irrespective of their baseline risk. It is hence unclear how NWA can con-
13   tend that the threshold has no bearing on liability *Second,* if NWA's position is that the 587 hours
14   of exposure threshold is not recognized in case law (and why would it be?), each toxic tort case must
15   be modeled using appropriate expert testimony that pertains to the specific toxins. It is for this
16   reason that Ms. Duncan hired an expert renowned in the field of secondhand smoke to conduct
17   dosimetry. The dosimetry is established to determine the risk level associated with the particular
18   facts of this case.

19        NWA next argues causation and degree of harm "are not issues that are determinable on a
20   class-wide basis." Def. Opp at 25:17-18. But as set forth in Ms. Duncan's opening brief, however,
21   the Ninth Circuit has specifically rejected any *per se* ban on personal-injury class actions. *Valentino*
22   *v Carter-Wallace, Inc* , 97 F 3d 1227, 1233 (9th Cir. 1996) (declining to follow *Rhone-Poulenc*'s
23   outright ban on personal-injury class actions and instead following the Sixth Circuit's recognition
24   that "in the mass tort context, class adjudication of certain issues may be more efficient and expedi-
25   tious than individualized litigation") Moreover, the Ninth Circuit has counseled that determining
26   whether class certification is appropriate must proceed on a case-by-case basis under the particular

PLAINTIFF'S REPLY MEMORANDUM IN          - 23 -
SUPPORT OF MOTION FOR CLASS
CERTIFICATION



HAGENS BERMAN LLP
*Attorneys at Law*

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623 0594

1  facts and circumstances of the case  *See Valentino*, 97 F.3d at 1230 (citing 7B CHARLES ALAN

2  WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D, § 1783 at 74-75 (2d ed. 1986)), *see*

3  *also* 3 HERBERT B  NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS, § 17 05 (3d ed. 1992)

4  (noting modern trend has been to expand use of class-action litigation in mass tort context))

5  　　　　And indeed, the facts of each case cited by NWA and the propositions for which they stand

6  are unique to the issues of that case.  For example, though NWA relies on *In re Agent Orange* and its

7  "rejection" of "generic causation" (Def  Opp. at 24 16-21), the case is distinguishable on its facts.

8  As *In re Agent Orange* noted, "[b]y any measure, this is an extraordinary piece of litigation  It

9  concerns the liability of several major chemical companies and the United States government for

10  injuries to members of the United States, Australian, and New Zealand armed forces and their

11  families." *In re Agent Orange*, 818 F.2d at 148.  To complicate matters further, the toxicity of the

12  product allegedly causing the injuries was sharply disputed.  *In re Agent Orange*, 818 F.2d at 152

13  As the court noted, "[w]hether the trace elements of dioxin in Agent Orange were hazardous to

14  persons in sprayed areas is sharply disputed.  Indeed, the toxicity of dioxin itself remains a

15  controversial issue." *Id.* (citing P. Schuck, AGENT ORANGE ON TRIAL 16-24 (1986), M. Gough,

16  DIOXIN, AGENT ORANGE (1986)).  Hence, in *In re Agent Orange,* it was not even clear *who* was

17  exposed, *what* they were exposed to and *who* was responsible for the exposure. *See id.*

18  　　　　The issues before this Court are far less complex and daunting, with simpler issues of law

19  and fact.  Here, the parties know who was exposed – flight attendants working on Trans-Pac flights;

20  what they were exposed to – secondhand tobacco smoke; and a threshold exposure that caused injury

21  – 587 hours of flight time.  Indeed, the identity of the at-risk flight attendants and the presence of

22  carcinogens in the aircraft are not in dispute.[29]

23

24

25

26  　　[29] Mr  Repace and Ms  Duncan's counsel have never disputed that secondhand smoke exposure may be variable  *Cf*,
Def  Opp  at 25 8-13  For this reason Mr  Repace employed the well-mixed model, which renders conservative results,
to determine the threshold exposure level  *See* Repace Reply Rep  ¶ 4

PLAINTIFF'S REPLY MEMORANDUM IN
SUPPORT OF MOTION FOR CLASS
CERTIFICATION

- 24 -

HAGENS BERMAN LLP
Attorneys at Law

OFFICES IN SEATTLE  PHOENIX  LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623 0594

1271 10 0038 MTN DOC

**(2)   Common factual issues will also resolve class members'**
**entitlement to medical-monitoring relief**

Ms. Duncan will establish entitlement to medical-monitoring relief through the use of class-wide evidence. As Ms. Duncan detailed in her opening memorandum, Mr. Repace demonstrated that consequences of NWA's breach – placing flight attendants at increased risk of disease – applies to the entire class. *See* Plf. Mem. at 13-16. Mr. Repace established that Ms. Duncan and the class are placed at an increased risk of mortality and morbidity as a result of exposure to secondhand smoke aboard NWA flights  Repace Report ¶¶ 90; 4, 6, 7 & 8 of Conclusion. This risk reaches the *de manifestis* level, and is thus deemed significant, at 587 hours when compared to their chances of developing the disease had NWA not allowed smoking, as well as the chances the general public will contract the disease. Repace Report ¶¶ 83-87; 10 of Conclusion. There can be no question regarding the seriousness of lung cancer, breast cancer and heart disease, as well as other diseases related to secondhand smoke exposure, nor the necessity for early detection of these diseases and diagnosis. As Mr. Repace makes clear, all the flight attendants are placed at a significant risk of contracting a secondhand smoke related disease after 587 hours irrespective of their baseline  The need for medical monitoring is established on a class-wide basis.

Ignoring this evidence, NWA contends that "      · i   .   .            ₌ .  concluded that entitlement to medical monitoring relief requires a highly individualized factual inquiry." Def  Opp at 26 (collecting cases). NWA suggests that these courts' holdings are "based on the complex nature of medical monitoring claims. Contrary to plaintiff's contention 'mere exposure is not enough '" Def. Mem. at 27 n.26. NWA's authorities, however, are distinguishable. For example, while NWA cites to the smokers' cases of *Smith v  Brown & Williamson Tobacco Corp* , 174 F.R.D. 90 (W.D Mo  1997), *Arch v  American Tobacco Co* , 175 F.R D  469 (E.D. Pa. 1997), and *Barnes v  American Tobacco Co* , 161 F 3d 127 (3rd Cir. 1998), the issues here are dissimilar for many reasons – include-ing that in those cases, unlike here, there was no threshold exposure level  The class in *Brown*, for example, was defined as "[a]ll persons in the State of Missouri who have suffered personal injury as

PLAINTIFF'S REPLY MEMORANDUM IN
SUPPORT OF MOTION FOR CLASS
CERTIFICATION

- 25 -



HAGENS BERMAN LLP
*Attorneys at Law*

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1   a result of smoking cigarettes designed, manufactured or sold by Brown & Williamson Tobacco

2   Company ...." *Brown*, 174 F.R.D. at 92. *Brown* noted that "medical monitoring damages are avail-

3   able only after there has been a showing of increased risk of health problems (*e.g.*, cancer)." *Id* at

4   97 (citing *Elam v Alcolac, Inc*, 765 S.W 2d 42, 208-09 (Mo Ct. App. 1988). Based on the class

5   definition, however, it was not even clear who fell within the class, let alone who was at an increased

6   risk of injury. Individual inquiries were thus necessary to determine a person's risk. Here, by con-

7   trast, the 587-hour threshold establishes increased risk of injury and is central to the class definition.

8       Likewise, the court in *Arch v. American Tobacco Co* noted that each individuals' smoking

9   history was different and thus the "type of monitoring that would be appropriate would require indi-

10   vidual analysis of factors such as the amount and duration of smoking." 175 F.R.D. at 490  Again,

11   Ms Duncan has eliminated this concern  Like *Brown* and *Arch*, the class in *Barnes v American*

12   *Tobacco Co.*, was purported at over one million Pennsylvania cigarette smokers with no requirement

13   that they have smoked a certain amount of cigarettes or for any certain duration  161 F.3d at 131

14   In light of this, the court would have been required to analyze each smoker's individual smoking

15   history to determine their risk level. *Id.* at 146. In addition to these issues, these courts were faced

16   with complex issues of reliance and addiction as predicates to medical monitoring relief. *See Arch*,

17   175 F R.D  at 488; *Barnes v. American Tobacco Co*, 176 F.R.D. 479, 500 (E D. Pa. 1997) ("whether

18   or not someone is addicted is a highly individualistic inquiry"), *aff'd*, 161 F.3d 127 (3rd Cir 1998).[30]

19       To the contrary, for inclusion in the class proposed here, a NWA flight attendant must meet

20   threshold requirements pertaining to date of employment, place of employment and length of expo-

21   sure. *See* Motion for Class Certification, class definition. NWA's own authority, *Dhamer v*

22   *Bristol-Meyers*, 183 F.R.D. 520 (N D Ill. 1998) (cited at Def. Opp. at 20:2-9), illustrates why class

---

23   [30] It is for this reason that NWA's reliance on these cigarette smokers' cases is unavailing  These cases raise numer-
ous factual issues simply not present in this case – *e g*, addiction and reliance  The proposed classes in those cases were
24   overly inclusive, failing to delineate any required elements for inclusion in the class  *See, e g*, *Smith, supra* (where class
defined as "[a]ll persons in the State of Missouri who have suffered personal injury as a result of smoking cigarettes
25   designed, manufactured or sold by Brown & Williamson Tobacco Company"), *Clay v American Tobacco, Inc*, 188
F R D  483, 490 (1999) (class defined as "all persons in the United States who, as children, purchased and smoked
26   cigarettes designed, manufactured, promoted, or sold by the defendants")  Simply put, nationwide individual smoker
class actions alleging fraud, misrepresentation, false advertising, products liability, breach of warranty and other claims
against a multitude of defendants is materially different from the present class

PLAINTIFF'S REPLY MEMORANDUM IN             - 26 -
SUPPORT OF MOTION FOR CLASS
CERTIFICATION



OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623 7292 • FACSIMILE (206) 623 0594

1    treatment of Ms Duncan's medical-monitoring claims is appropriate here while not in others   In

2    *Dhamer,* plaintiff sought certification of class of 1.6 million Stadol Nasal spray users "who became

3    addicted to the drug" residing nationwide.  *Id.* at 524.  The plaintiff alleged claims for violation of

4    the consumer protection act, breached of implied warranties and failure for particular purpose, as

5    well as medical monitoring and others.  *Id.* at 523   Class certification was denied.  *Id* at 553-34.

6    Aside from dealing with variations among fifty state laws – as opposed to only seven here – the

7    *Dhamer* court was faced with the issue of addiction and the fact that all 1.6 million "members of the

8    medical monitoring class seeking treatment [would] ultimately have to demonstrate their addiction

9    and its causes."  *Id* at 531.  These fact-intensive issues, coupled with a nationwide class with over a

10   million members, are absent here.[31]

11        In short, the essence of NWA's argument is that medical monitoring is *never* appropriate in a

12   multi-plaintiff context.  But not only are NWA's authorities distinguishable on their own facts, but

13   NWA's argument is contrary to rulings certifying medical monitoring.  *See*, for example, *Cook v*

14   *Rockwell Int'l Corp.*, 151 F R.D  378, 388 (certifying medical monitoring class); *Day v. NLO, Inc* ,

15   144 F R D  330, 336 (S.D. Ohio 1992) (certifying medical monitoring class).[32]

16

17

18

---

[31] NWA's citation to *Thomas v  FAG Bearings Corp* , 846 F. Supp. 1400 (W D  Mo  1994) is irrelevant as it applied
Missouri's standard of proof in seeking medical monitoring   Flight attendants residing in Missouri are not part of the
class   Similarly, *O'Connor v  Boeing North Am , Inc* , 180 F.R D  359 (C D  Cal  1997), is also distinguishable in that
the class was defined as any individual that lived in the alleged toxic area during the thirty years preceding the filing of
the complaint  *Id*  at 364   Again, there was no threshold level of exposure   *Hurd v  Monsanto Co* , 164 F R D  234 (S D
Ind  1995), and *Thompson v  American Tobacco Co* , 189 F R D  544 (D  Minn  1999), like the others, involved broadly
defined classes with no minimum requirement of exposure necessary for inclusion   They are thus distinguishable

And in *Werlein v  United States*, 746 F  Supp  887 (D  Minn  1990), plaintiffs brought claims under myriad of
federal and state environmental statutes, as well as common-law claims  *Id*  at 890   Plaintiffs sought injunctive relief
and response costs under the environmental statutes, as well as damages, compensation for personal injuries, property
damages, and the establishment of a medical-monitoring fund under common law. *Id*  at 890-91   Notably, the court
found, with respect to the plaintiffs requested medical-monitoring program, "[p]laintiffs state that monitoring would
depend upon the recommendation of the individual's personal physician   No assessment of the [toxic chemical] release
would be involved." *Id*  at 904   It was reasonable, where no assessment of the release was involved and establishing an
increased risk was based solely on each class members, that the proof was "not workable in a class action format." *Cf* ,
Def Opp at 26·25-27   That is simply not the case here, however

[32] To be clear, Ms  Duncan does not dispute that proof of causation for *physical injuries* may focus on individual
issues   These individual issues do not, however, compel denial of class certification   They can be addressed separately
in bifurcated proceedings  *See infra* at 30-33

PLAINTIFF'S REPLY MEMORANDUM IN                    - 27 -
SUPPORT OF MOTION FOR CLASS
CERTIFICATION



HAGENS BERMAN LLP
*Attorneys at Law*

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE  WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1271 10 0038 MTN DOC

1

2

### (3) Neither do NWA's *affirmative defenses introduce individual factual issues that defeat certification*

3

4

According to NWA, "each of NWA's affirmative defenses requires an individual by

5

individual analysis." Def. Opp. at 27:16-17  This is incorrect.  As set forth above, NWA's defenses

6

of federal preemption and primary jurisdiction are questions of law, and would apply equally to all

7

class members  Likewise, issues related to workers' compensation preemption, according to NWA,

8

are largely legal questions, as NWA's own summary judgment motion on the issue demonstrates

9

Factual variations are minimal  All class members had the same job duties, worked in the same

environment, and will look to the same evidence of NWA's intent.

10

Issues relating to contributory negligence also do not present material factual variations.

11

NWA has submitted testimony detailing the bidding process that goes into selecting a flight plan

12

According to NWA, "most positions on the Trans-Pacific routes were awarded to flight attendants

13

who had expressed an affirmative preference for them "  *See* Affidavit of Brian Moreau.  It is thus a

14

common legal issue whether a worker's choice to accept a position somehow vitiates an employer's

obligation to provide a safe workplace.

15

16

As to NWA's purported statute-of-limitations defense, individual issues related to statute of

17

limitations do not defeat class certification.  *Cameron v. E.M. Adams & Co.*, 547 F.2d 473, 478 (9th

18

Cir  1976); *In re Energy Systems Equipment Leasing Sec  Litig.*, 642 F. Supp. 718, 753 (E.D.N Y

19

1986) (citing cases).[33]  Finally, NWA's argument regarding set-off is a red herring as individuals in

20

the *Broin* litigation received no compensation for their injuries or any medical-monitoring benefits

21

Hence, the individual fact issues do not defeat certification.  Moreover, the court can try

22

common issues first, leaving residual individual issues for a second phase  *See infra* at 30-33.

23

Finally, as discussed *infra*, the Court can certify certain issues under Rule 23(c)(4)(A).

24

25

26

---

[33] *See also Cook v  Rockwell Int'l Corp* , 151 F R D  378, 386 (D  Colo  1993) (statute-of-limitations defense cannot bar class certification because it is impermissible to allow an argument based on the merits of an affirmative defense to preclude class certification under Rule 23), *Gruber v  Price Waterhouse*, 117 F R.D  75, 80 (E D  Pa  1987) (statute-of-limitations defense goes to merits of plaintiffs' complaint, is beyond the scope of a motion for class certification), *Rishcoff v  Commodity Fluctuations Sys , Inc* , 111 F R D  381, 382-33 (E D  Pa  1986) (statute of limitations should not be considered in determining certification), *Fickinger v  C I  Planning Corp* , 103 F R D  529, 532 (E D  Pa  1984) (statute-of-limitations defense improper consideration for class certification)



HAGENS BERMAN LLP
*Attorneys at Law*

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE  SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623 7292 • FACSIMILE (206) 623 0594

1       **2.**    *Class treatment is superior to individual trials – or no remedy at all*

2       In addition to predominance of common questions, Rule 23(b)(3) also requires that a class

3 action be "superior to other available methods for the fair and efficient adjudication of the

4 controversy." Def. Opp. at 31. In considering superiority, the court is to consider four factors

5 enumerated in the Rule *Id.*; *See also* Plf. Br. at 32 [34]

6       **Interest in controlling litigation**: As to the first factor, NWA argues "[b]ecause of the

7 highly individualized nature of medical monitoring claims, individual members of the purported

8 class would have a significant interest in managing their own claims." Def. Opp. at 31:23-25. As

9 discussed *supra* at 10-16, 25-27, medical-monitoring claims are not "highly individualized " And as

10 a result, individual class members have no significant interest in managing their own claims, and

11 each class member will benefit from the monitoring program as pled. But more importantly, any

12 member of the class who wants more control in the action can enter an appearance through their own

13 counsel under Rule 23(c)(2) or opt out of the class and intervene in the case.[35]

14       **Other litigation·** As to the second factor, NWA argues that under the *Broin* settlement

15 "flight attendants who were injured by ETS *had* the opportunity to bring suit for damages, unhinder-

16 ed by statute of limitations defense " Def. Opp. at 31-32 (emphasis added). But this right provided

17 no benefit for flight attendants who had yet to manifest physical injury but needed a medical moni-

18 toring program. Moreover, her theoretical ability to sue *the tobacco industry* individually does

19 nothing to hold her employer responsible for breaching its duty of care.

20       **Concentration in a single forum**: As to the third factor, NWA argues that the "substantial

21 disparity in states' laws, as well as novelty of Plaintiff's claims there would be no advantage – and

22 significant disadvantage – in concentrating the litigation in a single forum " Def. Opp. at 32 1-3  But

23

---

24   [34] These four factors are  (A) the interest of members of the class in individually controlling the prosecution    of
    separate actions, (B) the extent and nature of any litigation concerning the controversy already commenced by or against

25     members of the class, (C) the desirability or undesirability of concentrating the litigation of the claims in the particular
    forum, (D) the difficulties likely to be encountered in the management of a class action

26   [35] Rule 23(c)(2) provides that members may request exclusion from the class or "any member who does not request
    exclusion may, if the member desires, enter an appearance through counsel "

PLAINTIFF'S REPLY MEMORANDUM IN      - 29 -
SUPPORT OF MOTION FOR CLASS
CERTIFICATION

HAGENS BERMAN LLP
*Attorneys at Law*

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623 0594

1 | this is not true. As courts have noted, concentrating the action in a single forum is superior to the
2 | alternative of repeating, "hundreds of times over," the litigation of issues with "days of the same
3 | witnesses, exhibits and issues from trial to trial." *Jenkins v. Raymark Indus., Inc*, 782 F.2d 468, 474
4 | (5th Cir. 1986).

5 | **Manageability** Finally, as to the fourth factor, NWA argues that the "extraordinary
6 | predominance of individual issues would require this Court to have an endless series of mini-trials,
7 | destroying any possible advantages of class treatment." Def. Opp at 32:3-8. Nonsense. Given the
8 | predominating common questions in this litigation and the numerous case management tools
9 | available, this case can be litigated far more efficiently as a class action Rule 23 is a flexible device
10 | that can be molded to suit the particular circumstances at hand As one court aptly noted,
11 | "*[n]ecessity moves us to change and invent.* Both *In re Agent Orange* and *Asbestos School* courts
12 | found that specific issues could be decided in a class 'mass tort' action – even on a nationwide
13 | basis." *Jenkins*, 782 F 2d at 474 (affirming class certification of approximately 5000 asbestos-
14 | related physical-injury cases pending in the Fifth Circuit; emphasis added). Under Rule 23(c)(4)(A)
15 | and Rule 42, this court can sever common issues and/or order bifurcated trials to further efficiency
16 | and economy. Though a widely accepted practice, NWA downplays this approach to class-action
17 | manageability, mentioning it only in passing. *See* Def. Mem. at 32 n 27.

18 | Ms Duncan has met the predominance requirement and it is these overriding predominating
19 | issues that she seeks to have resolved in a first phase of a bifurcated class action trial. Such common
20 | issues to be resolved would be, among possible others.

21 | • Whether the Railway Labor Act bars a flight attendants' claims for injuries,

22 | • Whether the Federal Aviation Administration has primary jurisdiction over this matter;

23 | • Whether exposure to secondhand smoke creates an increased risk of contracting certain
24 | cancers, heart disease and other serious diseases;

25 | • Whether secondhand smoke in the work environment renders that work environment
unsafe,

26 | • What date NWA knew or should have known that secondhand smoke is unsafe;

PLAINTIFF'S REPLY MEMORANDUM IN          - 30 -
SUPPORT OF MOTION FOR CLASS
CERTIFICATION



HAGENS BERMAN LLP
*Attorneys at Law*

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 Fifth Avenue, SUITE 2900 • Seattle, WA 98101
TELEPHONE (206) 623 7292 • FACSIMILE (206) 623 0594

1271 10 0038 MTN DOC

- Whether flight attendants injuries from secondhand smoke arose from the work place for purposes of workers' compensation preemption,

- Whether NWA knew injury was certain to occur by allowing smoking aboard its flights and willfully disregarded that knowledge,

- Whether a flight attendants' decision to bid a Trans-Pac flight contributed to her harm,

- Whether inclusion in the *Broin* settlement bars a flight attendants' claim;

- Whether 587 hours of exposure to secondhand smoke places one at an increased risk of cancer, heart disease or other serious disease; and

- Whether screening and/or monitoring procedures exist for the early detection of these diseases

Notably, resolution of the first two issues in NWA's favor will end this case. Resolution of the last two common issues above in Ms. Duncan's favor will allow for medical-monitoring damages for the class. Resolution of these numerous common issues on a class-wide basis is hence not only manageable, but efficient. The only individual issues left to be resolved in a second trial phase would be (i) the application of the statute-of-limitations discovery rule, (ii) causation for purposes of physical-injury claims, and (iii) damages for these same claims.

Courts approve of this very sort of bifurcated proceeding as a means to leverage the gains in economy and efficiency that class treatment offers. The Fifth Circuit, for example, affirmed certification of an asbestos class where the district court "certified the class as to the common questions, ordering them resolved for the class by a class action jury." *Jenkins*, 782 F.2d at 471. "The class jury would also decide all the individual issues in the class representatives underlying suits [and] individual issues of the unnamed members would be resolved later in 'mini trials' of seven to ten plaintiffs." *Id* The district court also "subsequently appointed a special master to survey the class and prepare a report, detailing the class members and their claims, to apprise the jury of the gravity and extent of the absent members' claims and the typicality of the representatives' claims." *Id*

Likewise, in *Slaven v BP Am , Inc* , 190 F.R D 649, 650 (C.D. Cal 2000), the district court considered a motion to decertify an environmental class action arising from an oil spill that fouled ocean and beaches. The court bifurcated individual questions of causation and damages from the

PLAINTIFF'S REPLY MEMORANDUM IN
SUPPORT OF MOTION FOR CLASS
CERTIFICATION

- 31 -



OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1271 10 0038 MTN DOC

1    class proceedings but plaintiffs nonetheless could proceed on a class basis as to the overriding

2    liability issue.  "[a]ll Plaintiffs seek to hold the Defendants responsible for their acts in causing the

3    oil spill.  And this Court has the power to isolate a common issue, such as liability, and proceed with

4    class treatment on that issue alone."  *Id.* at 657 (citing *Valentino v Carter-Wallace*, 97 F.3d at 1234;

5    Fed R. Civ P. 23(c)(4)(A)).  Simply, "Rule 42(b) permits a court to divide up a single action into

6    separate trials, thereby treating individual claims in phases, rather than en masse "  *Id* (citing *De

7    Anda v  City of Long Beach*, 17 F 3d 1418, 1424 (9th Cir 1993)).

8         Similarly, in *Mullen v  Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999), which has

9    a similar fact pattern to the present case, the trial plan included a bifurcated proceeding.  *See* Plf

10   Class Cert Mem. at 23, 33.[36]  There the Fifth Circuit affirmed a grant of class certification of casino

11   workers who had suffered personal injuries as a result of a poorly ventilated work environment filled

12   with tobacco smoke.  *Id*  at 629  In order to deal with individual issues present in the litigation, the

13   trial court entered a bifurcated trial plan finding that it would "promote judicial economy and avoid

14   the wasteful, duplicative litigation which would inevitably result if these cases were tried

15   individually."  *Id*  at 627  Pursuant to the court's bifurcated plan, "the liability issues common to all

16   class members" would be tried together in an initial trial phase.  *Id.* at 623.  The common issues

17   included such issues as "whether the Casino was rendered unseaworthy by the air quality aboard,"

18   and "whether [the employer] was negligent in relation to the Casino's ventilation system."  *Id*  If the

19   common liability issues were resolved in the employers' favor, the case would be over.  However,

20   "if the class prevails on the common liability issues in phase one, the issues affecting only individual

21   class members [would be] tried in a second phase in waves of approximately five class members at a

22   time. These limited issues include causation, damages and comparative negligence."  *Id*

23

---

24   [36] NWA's attempts to distinguish *Mullen* on the grounds that employees were suing their employer for injuries
     suffered from a faulty ventilation system alleging claims under the Jones Act and the doctrine of seaworthiness  Def
25   Mem. at 25 n 25  NWA, however, ignores that the faulty ventilation system harmed these individuals only because the
     Casino was already filled with smoke  Indeed, the named plaintiff's testifying physician attributed "the named plaintiff's
26   upper respiratory problems and other crew members' maladies to extremely smoky conditions in the Casino." *Mullen*,
     186 F 3d at 623  Thus, the only real differences between this case and *Mullen* is the legal duty involved  It is thus a
     distinction without a difference for purposes of this discussion.

PLAINTIFF'S REPLY MEMORANDUM IN              - 32 -
SUPPORT OF MOTION FOR CLASS
CERTIFICATION



OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623 0594

In *Watson v Shell Oil Co*, 979 F.2d 1014, 1017 (5th Cir. 1992), defendants sought reversal of certification of a toxic tort class involving over 18,000 claimants. The district court certified the class and then issued "orders detailing a four-phase plan for trial." *Id*[37] The Fifth Circuit approved this trial plan finding that, "[i]n the context of mass tort litigation, we have held that a class issue predominates if it constitutes a significant part of the individual's case." *Id.* at 1022 (citing *Jenkins*, 782 F.2d at 472) Notably, in the *Broin v. American Tobacco*, the court certified a nationwide class of 60,000 flight attendants for personal injury claims. The court set forth an order bifurcating the proceedings with "generic causation" set for Phase I of the trial. *See Ramos v Philip Morris Cos*, 743 So.2d 24, 27 (Fla. Dist. Ct App. 3d Dist.).[38] This similar course was taken *In re Copley*, 158 F.R.D. 485, 492 (D Wyo. 1994), where the court ordered bifurcated proceedings to address common and individual issues:

> common issues predominate the Plaintiffs' claims for strict liability, negligence, negligence per se, breach of warranties, and the request for declaratory relief. These issues, surrounding the Defendant's liability for the contaminated Albuterol, may be tried to a single jury in a unified trial. Then, if the Plaintiffs are successful, class members may pursue their individual cases in separate trials to determine if they suffered an injury from the contaminated Albuterol, and if so, the proper measure of any damages …

Ms Duncan does not dispute that proof of causation for physical-injury damages may require a focus on class members' individual circumstances What she does dispute is that such individual issues compel denial of class certification. As shown, they do not.

In short, there can no question that common issues may be certified, and are routinely certified, to deal with class-action lawsuits.

---

[37] Phase One addressed common liability, and *if* the jury found punitive damage liability in Phase One, it would move onto Phase Two to "determine compensatory damages in 20 fully-tried sample plaintiff cases " *Watson,* 979 F 2d at 1017 In Phase Three, a different jury would resolve "issues unique to each plaintiff's compensatory damage claims, e g , injury, causation, and quantum " *Id* Notably, the Phase Three trials would proceed "in waves of five, scheduled according to a format based upon factors, including location of the injured person or property at the time of the explosion and extent and nature of the damages," determined by a statistician employed by the court. *Id* Then, in Phase Four, the district court would "compute, review, and award punitive damages, if any," as established in Phase One *Id*

[38] In *Ramos,* the court explained that the *Broin* court entered a trial plan providing that the litigation would proceed in two stages where "Stage I would focus on common questions, including 'generic causation' as to the various disease categories in the *Broin* complaint [and] Stage II would focus on remaining issues " 743 So 2d at 27



HAGENS BERMAN LLP

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623 7292 • FACSIMILE (206) 623 0594

## C. The Court Can Also Certify Ms. Duncan's Injunctive Relief For a Medical-Monitoring Program Under Rule 23(b)(2)

The two elements for a subsection (b)(2) class are: (1) the party opposing the class must have acted, refused to act, or failed to perform a legal duty on grounds generally applicable to all class members, and (2) final relief of an injunctive or declaratory nature, settling the legality of the behavior with respect to the class as a whole, must be appropriate. *See* 1 H. NEWBERG & A. CONTE, NEWBERG ON CLASS ACTIONS § 4 11 (3d ed. 1992); *Gete v INS*, 1999 U.S. Dist. Lexis 11806 at *4 (W.D. Wash. July 21, 1999). NWA does not challenge that Ms. Duncan's claims satisfy the first prong. NWA instead focuses on the latter prong, arguing that Ms. Duncan does not seek injunctive or declaratory relief, and thus, she fails the (b)(2) analysis.

Courts throughout the country, however, recognize that medical-monitoring trust funds are injunctive, and therefore well suited for class treatment under Fed. R. Civ. P. 23(b)(2). *See, e.g., Gibbs v E I DuPont De Nemours & Co*, 876 F. Supp. 475, 481 (W.D.N Y. 1995), *Yslava v Hughes Aircraft Co*, 845 F. Supp. 705, 713 (D. Ariz. 1993); *Day v. NLO Inc.*, 144 F.R.D 330, 335 (S.D Ohio 1992), *vacated in part on other grounds and denying petition for writ to vacate Rule 23(b)(2) certification, In re NLO*, 5 F 3d 154 (6th Cir 1993); *German v Federal Home Loan Mortg. Corp*, 885 F. Supp. 537, 559 (S.D.N Y 1995). As pled, the medical-monitoring program involves:

> (i) notifying flight attendants of existing information concerning the effects of prolonged inhalation of second-hand tobacco smoke; (ii) to the extent necessary, funding a further unbiased study of those effects; (iii) gathering and forwarding to treating physicians information relating to the diagnosis and treatment of injuries which may result from Class members' prolonged inhalation of second-hand tobacco smoke; (iv) aiding the early diagnosis and treatment of resulting injuries and illnesses; and (v) providing funding for diagnosis and treatment of resulting injuries and illnesses.

Complaint ¶ 60 As explained more thoroughly in her memorandum in support of class certification, this program would be a "court-ordered medical monitoring program supervised by court-appointed and court-supervised trustees," such that the "Court would appoint qualified trustees to develop and implement a uniform and scientifically justified medical monitoring program." Plf Brf. at 29.

PLAINTIFF'S REPLY MEMORANDUM IN
SUPPORT OF MOTION FOR CLASS
CERTIFICATION

- 34 -

HAGENS BERMAN LLP
attorneys at law

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1    NWA argues that Ms. Duncan's "complaint never once mentions court-involvement in

2    administration of medical monitoring." *Def. Opp.* at 36. But Ms. Duncan is not bound solely by the

3    notice pleading of her Complaint. Indeed, this Court has found that a plaintiff's motion for class

4    certification is not required to directly mirror the Complaint and that plaintiff may, in the motion for

5    class certification, clarify the request sought. *See Smith v University of Wash Law Sch*, 2 F Supp.

6    2d 1324, 1337 n 7 (W.D. Wash. 1998) (Zilly, J.) (where plaintiffs' consolidated complaint sought

7    certification under 23(b)(3) and 23(c)(4); motion for class certification sought certification under

8    (b)(2); plaintiffs' counsel asked at oral argument that the court consider the request sought in the

9    class-certification motion, and court certified (b)(2) class).

10    NWA protests that in addition to a medical-monitoring program, Ms. Duncan also requests

11    "damages for all diseases caused by exposure to second-hand smoke " *Def. Opp.* at 36  But this

12    Court has found that "[p]laintiff's maintaining a (b)(2) class action are not precluded from seeking

13    money damages" provided that "their claim for money damages [is] incidental to their primary claim

14    for injunctive relief" *Smith*, 2 F. Supp  2d at 1340 (citing *Probe v. State Teachers' Retirement Sys*,

15    780 F.2d 776, 780 (9th Cir.), *cert denied*, 476 U.S 1170 (1986)). Here, the claim for money dam-

16    ages on account of NWA's breach is clearly separate because Ms. Duncan does not ask the Court to

17    certify a damages class for present physical injuries. *See supra* at 31. Such damages are separate

18    and secondary to Ms. Duncan's goal of obtaining a monitoring program for the class.[39]

19    NWA next argues that Ms. Duncan's emphasis on the injunctive and equitable nature of

20    medical monitoring relief cannot be reconciled with her counsel's statements before the Ninth

21    Circuit that this case "is a run-of-the-mill personal injury claim." *Def. Opp* at 36. But NWA's

22    cherry-picked statements taken out of context cannot fool this Court. Indeed, the focus in the district

23    court proceedings, and subsequently in the Ninth Circuit, was whether it was permissible to

24    challenge NWA's smoking policies in light of the Airline Deregulation Act's preemption of "any

25

26    [39] NWA's argument that (b)(2) is inappropriate simply because *one aspect* of Ms. Duncan's program as pled requires "funding for diagnosis and treatment" is meritless  *See Gibbs*, 876 F  Supp  at 481 (finding that a court-administered fund that goes beyond payment for monitoring is injunctive)

PLAINTIFF'S REPLY MEMORANDUM IN          - 35 -
SUPPORT OF MOTION FOR CLASS
CERTIFICATION



HAGENS BERMAN LLP
*Attorneys at Law*

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623 7292 • FACSIMILE (206) 623 0594

1271 10 0038 MTN DOC

1  law, rule, regulation, standard, or other provision having the force and effect of law *relating to the*

2  *rates, routes or service* of any air carrier." *Duncan v Northwest Airlines, Inc*, 208 F.3d 1112, 1113-

3  14 (9th Cir. 2000) (citing 49 U.S.C. § 1305(a)(1))

4  Before the Ninth Circuit, NWA argued that smoking was a service and that Ms. Duncan's

5  lawsuit related in an impressible manner to the service of smoking. *Id.* at 1115.  In response, Ms

6  Duncan's counsel argued that her claim did not seek to challenge any aspect of NWA's smoking

7  policy but rather simply sought relief for personal injury – as in any tort lawsuit.  In an effort to

8  establish that she simply sought relief for the injury inflicted, and was not attempting to regulate

9  NWA's decision regarding smoking, she "dropped the equitable claims." Def. Opp at 36 (citing

10  "*see* 9th Cir. Tr. at 8")  But the equitable claim to which Ms. Duncan's counsel was referring was the

11  claim for injunctive relief requiring NWA to ban smoking on its Trans-Pac flights.  Thus, she

12  "dropped" *that* equitable claim and simply pursued a request for relief by way of damages and

13  medical monitoring.  Most importantly, the Ninth Circuit was fully aware at the time of Ms.

14  Duncan's argument that she sought medical monitoring and damages.  As the court noted, "the

15  complaint sought damages, an injunction, and medical monitoring " *Id.* at 1113 n3  The court

16  further stated, "both parties had agreed that Ms  Duncan abandoned her claim for injunctive relief

17  before the district court" and "[i]n any event, her request for injunctive relief would now be moot,

18  given that Northwest no longer permits smoking on its trans-Pacific flights." *Id.*  Thus the court was

19  plainly aware that claim for medical monitoring and a claim for damages still existed.

20  Next, NWA asserts that courts are unwilling to certify (b)(2) classes.  But, as established in

21  Ms  Duncan's opening brief, and *supra*, courts routinely certify medical monitoring classes under

22  (b)(2) in cases involving environmental contamination and exposure to toxic chemicals  NWA's

23  attempts to distinguish these cases fails.[40]  Moreover, its own authority is unavailing.[41]

---

[40] NWA attempts to distinguish Ms  Duncan's citation to *Gibbs, supra*, on the grounds that "the request for medical monitoring program did not include funding for treatment    ." Def Opp at 38 n31  However, this is not true, as the *Gibbs* court stated, "A court-administered fund which goes beyond payment of the costs of monitoring an individual plaintiffs health to establish pooled resources for the early detection and advances in treatment of the disease is injunctive in nature rather than "predominantly money damages" and therefore is properly certified under Rule 23(b)(2) " 876 F 2d 475, 481  Hence, the program provided for payment of monitoring and treatment and also went beyond, as does Ms Duncan's request  NWA argues that in *Yslava v  Hughes Aircraft Co*, 845 F  Supp 705, 713 (D



1   Simply put, the majority of courts hold that a "court-supervised medical monitoring program

2   through which class members will receive periodic examinations may be properly characterized as

3   seeking injunctive relief, and thus, appropriate for certification under Rule 23(b)(2)." *Elliott v*

4   *Chicago Housing Authority, CHAC, Inc*, 2000 U.S. Dist. Lexis 2697 at *46 (N.D. Ill. 2000)    The

5   "crux" of Ms. Duncan's case is not monetary damages because what she has lost – her health – is

6   incapable of quantum   Rather she seeks a court-administered medical monitoring program

7   certifiable under (b)(2).

8   ### III.   CONCLUSION

9   For the reasons set forth above and in Ms. Duncan's brief in support of class certification, the

10   Court should certify Ms. Duncan's claims for class treatment and her as class representative.

---

16

17   Ariz 1993), "the damages sought were for medical monitoring costs already incurred rather than general compensatories " Def Opp at 38 n31 (citing *O'Connor*, 180 F.R.D. at 378 n23 )  However, in *Yslava* plaintiffs sought "to recover damages for medical monitoring costs already incurred *as well as* future medical monitoring costs under state

18   law theories of negligence, nuisance, trespass and strict liability  Plaintiffs also seek attorneys' fees in connection with their state law claims " *Yslava*, 845 F.R D  at 708  Thus, NWA's out-of-context quote is misleading  And when in context, *Yslava is even more compelling because plaintiffs there sought past money paid and future funding and the case*

19   *was certified under (b)(2)  Id*

20   [41]NWA's own authorities are unavailing  NWA cites to *O'Connor v  Boeing North American, Inc*, 180 F.R.D at 379 for the proposition that (b)(2) is inappropriate  Def Opp at 38  NWA notes that the *O'Connor* court stated that even if plaintiff's medical monitoring program "excluded treatment 'the primary goal' would still appear to be money

21   damages  *Id*  (citing *O'Connor*, 180 F R.D at 379, n 25 )  But NWA has not supplied the court with the entire quote which actually reads  "Currently, even if Plaintiff's medical monitoring program excluded treatment, 'the primary goal'

22   of Plaintiffs appears to be monetary damages, *considering that Plaintiffs seek compensatories and punitives and that all of the named Plaintiffs currently have cancer or have relatives with cancer, causing their desire for monetary damages*

23   *to outweigh their desire for a monitoring program*  *O'Connor*, 180 F R D  at 378 n25 (emphasis added)  This is simply not the case here  Likewise, NWA cites to *Dhamer v  Bristol-Meyers, Co*, 183 F R D. at 529  Def Opp at 38  But the *Dhamer* court held that "[a] medical monitoring claim may be properly classified as injunctive relief and certified under

24   Rule 23(b)(2) " *Dhamer*, 183 F R D  at 528  It was just in the particular circumstances of that case, where the "crux" of plaintiffs claims was for "recovery of damages for emotional distress and fraud, refund of all purchase money spent on

25   [the nasal spray], and treble, punitive and exemplary damages " *Id*  The court also noted that she sought a medical monitoring fund to provide funding of treatment  *Id*  The court stated, "[w]hile characterized by plaintiff as injunctive,

26   the ultimate relief requests is in the form of money damages *which when taken with plaintiff's other claims for money, demonstrate that money damages is the predominate relief sought* " *Id* at 528 (citing *Jaffee v  United States*, 592 F 2d 712, 715 (3ʳᵈ Cir  1979)) (emphasis added)

PLAINTIFF'S REPLY MEMORANDUM IN            - 37 -
SUPPORT OF MOTION FOR CLASS
CERTIFICATION



HAGENS BERMAN LLP
ATTORNEYS AT LAW

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 Fifth Avenue, SUITE 2900 • Seattle, WA 98101
TELEPHONE (206) 623 7292 • FACSIMILE (206) 623 0594

DATED:  April 5, 2001

HAGENS BERMAN LLP


By
    Steve W. Berman, WSBA #12636,
    Erin K. Flory, WSBA #16631
    Stephanie B. Levin, ASBA #018470
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
(206) 623-7292

Attorneys for Plaintiff

PLAINTIFF'S REPLY MEMORANDUM IN
SUPPORT OF MOTION FOR CLASS
CERTIFICATION

- 38 -

HAGENS BERMAN LLP
Attorneys at Law

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623 0594

1271 10 0038 MTN DOC